**Clarence PAULSON and wife, Julia B. Paulson, Petitioners,**

**v.**

**FIRE INSURANCE EXCHANGE, Respondent.**

**FIRE INSURANCE EXCHANGE, Petitioner,**

**v.**

**Clarence PAULSON and wife, Julia B. Paulson, Respondents.**

No. A–10325.

Supreme Court of Texas.

June 23, 1965.

Rehearing Denied July 21, 1965.

Austin Y. Bryan, Jr., Houston, for Paulson et ux.

Baker, Botts, Shepherd & Coates and B. D. McKinney, Houston, for Fire Ins. Exchange.

NORVELL, Justice.

This is a Hurricane Carla case. The trial court designation of the parties will be used in this opinion. Plaintiffs, Clarence Paulson and his wife, Julia, owned property in Palacios, Matagorda County, Texas, which was severely damaged by the winds and waters which attended the hurricane.

The defendant, Fire Insurance Exchange, was the insurer of such property. In a suit brought by plaintiffs, the District Court rendered judgment against the insurance company. The Court of Civil Appeals reversed the trial court's judgment and remanded the case to the District Court for another trial. 381 S.W.2d 199. As the Court of Civil Appeals at Houston, in Berglund v. Hardware Dealers Mutual Fire Insurance Co., 381 S.W.2d 631, placed a different construction upon the water exclusionary clause of the policy than that placed upon it by the Court of Civil Appeals in this case, we granted writ of error to settle this conflict in interpretation.

■ After having heard argument in both cases and considered the briefs of the parties, we have reached the conclusion that the judgment of the Court of Civil Appeals in *Berglund* should be reversed and that, in the main, the views of the Court of Civil Appeals in this case as to the proper construction of the insurance policy should be approved. Fire Insurance Exchange has filed an application for writ of error herein contending that the Court of Civil Appeals should have rendered judgment that plaintiff take nothing rather than ordering a remand for another trial. This position is well taken and the judgment of the Court of Civil Appeals will be modified accordingly.

The policy purchased by Mr. and Mrs. Paulson from Fire Insurance Exchange was a "named peril" policy which insured them "against direct loss resulting from any of the perils (listed below): * * * E. Extended Coverage—Windstorm, Hurricane, Hail, Explosion, Riot, Civil Commotion, Smoke, Aircraft and Land Vehicles."

Under the heading "Specific Coverage Conditions" appears the following exclusionary clause: "Conditions applicable only to windstorm, hurricane and hail: Unless specifically named hereon this Exchange shall not be liable for loss to metal smokestacks * * *, nor for loss caused * * * by snowstorm, tidal wave, high water, or overflow, whether driven by wind or not, unless the wind or hail shall first make an opening in the walls or roof of the described building and shall then be liable only for the loss to the interior of the building, or the insured property therein, caused immediately by rain entering the building through such openings."

The policy sued upon covered a residence house, an outbuilding and certain unscheduled personal property situated in such residence and outbuilding. The case was submitted to the jury and judgment rendered in the trial court upon the theory that if the damage to plaintiff's property was the direct result of Hurricane Carla the defendant was liable. For example, the issue relating to the residence house and the jury's answer thereto were as follows:

> "Do you find from a preponderance of the evidence that plaintiffs' residence house on Lot 5, Block 97, Palacios, Matagorda County, Texas, was damaged on or about September 10 and 11, 1961, as a direct result of Hurricane Carla?
> We the jury answer—yes."

The following definition was applicable to this issue:

> "By the term, 'proximate cause' or 'direct cause' as used herein is meant a cause which in a natural and continuous sequence, unbroken by any new and independent cause, produces an event, and without which the event would not have happened."

A similar question was asked as to an outbuilding on Lot 5, Block 97, and personal property belonging to the plaintiffs and located in the building on said Lot 5, Block 97, and affirmative replies were returned by the jury.

In addition to these answers, the jury answered "no" to issues inquiring if the residence house, outbuilding and personal

property of plaintiff had "sustained loss and damage as a direct result of tornado winds passing in the area of plaintiffs' property."

The jury was also asked in three issues if they found from a preponderance of the evidence that plaintiffs' residence house "did not sustain loss which was directly caused by high water, whether driven by rain or not." These issues were all answered, "Did not sustain such high water loss."

Some seven issues were submitted relating to the dollars and cents amount of damages, such as repair costs and the value of the various items of property before and after the passage of the hurricane.

■ We have examined the Statement of Facts in some detail. We conclude that there is no dispute but that plaintiffs' property sustained loss and damage as a result of Hurricane Carla. The Court of Civil Appeals held that the jury's findings that plaintiffs' property did not sustain loss caused by "high water, whether wind driven or not" was against the overwhelming preponderance of the evidence. We think that the evidence shows conclusively as a matter of law that a substantial portion of plaintiffs' loss or damage was the result of wind driven water.

In Hardware Mutual Dealers Insurance Company v. Berglund, Tex., 393 S.W.2d 309, this day decided, we held that although it could be said that the hurricane caused the loss, yet, nevertheless the plaintiffs could not recover unless they were able to establish that the loss did not come within the exclusionary clause relating to "tidal wave, high water, or overflow, whether driven by wind or not." We need not repeat what was said there. In the present case, it appears that water damage con-

tributed to plaintiffs' loss. The concise and accurate statement of the evidence contained in the opinion of the Court of Civil Appeals conclusively demonstrates this. 381 S.W.2d 199, 1. c. 200. In McDonald v. New York Central Mutual Fire Insurance Company, 380 S.W.2d 545 (Tex.Sup.1964), we held that a plaintiff could recover under an insurance policy similar to the one now before us by showing that the damage to his property was occasioned by the winds of the hurricane rather than by the high waters accompanying the storm. In the Berglund case above mentioned, the trial judge submitted the case to the jury upon the theory that the evidence disclosed that a portion of Berglund's damage was not caused by an excluded peril, namely, "tidal wave, high water, or overflow, whether driven by wind or not."

Plaintiff's theory of recovery as set forth in their application for writ of error is that "the insuring clause by the use of the word 'hurricane' should be construed and found to cover all losses directly and proximately caused by Hurricane Carla, including any and all parts of such losses caused in whole or in part by water, hurricane surge, wind and spray, rising ocean waters, as well as oil, debris, pollution and other conditions forming inseparable and integral part of a hurricane when it makes a landfall on the Texas coast. * * * [Plaintiffs] unreservedly contend that the rule of proximate cause controls and that every submission to the jury in a hurricane case should be submitted in the context and brackets of proximate cause and new and independent cause. * * * [T]he use of the word 'direct' loss in a Texas form of insurance policy modifies the loss result rather than the cause or causation."[1]

---

1. In its reply brief, the defendant quotes from a report of the State Board of Insurance dated October 20, 1961 as follows:

"Traditionally, insurance companies in the United States have refused to insure property at fixed locations against flood, rising waters, tide waters, or tidal waves, or other surface waters. * * *

"[O]ur Staff has tried since 'Carla' to find out if there was any carrier in the world that would write flood insurance on the Texas Gulf Coast

The plaintiffs in effect repudiate the theory that they would be entitled to recover for any loss caused by the force of hurricane winds alone and no requests for an alternative jury submission were made based upon such theory.[2] The evidence shows that hurricane winds of high velocity blowing from the north and northeast reached the Palacios area sometime Saturday night (September 9). Originally the wind was unacccompanied by high water. However, about five o'clock on the evening of Monday, September 11, the wind had changed to the southeast and was blowing across the bay at this time. This brought the high waters inland along the coast. There was considerable testimony as to the force of the winds prior to the appearance of the high water. One witness reported seeing a waterspout or tornado funnel. However, no witness testified that he saw the Paulson house during this time. The nearest anyone came to this was the statement of one witness that some "buildings were down before the water came up and I honestly believe that Clarence Paulson's house was tore up. * * *" This remark was stricken from the record by the trial judge.

■ After the hurricane had passed, plaintiffs' residence house remained standing and was in a repairable condition. One witness who submitted a bid for restoring the building mentioned an item of $180.00 for ninety square feet of wall, and volunteered the statement "that means the total wall section which was blown out." However, there was no evidence from eye witnesses as to damage done to the plaintiffs' property by wind action alone, nor did anyone attempt to estimate the proportionate part of the damage caused by wind action, independent of all other causes, considering such factors as the force of the winds and the type of construction represented by plaintiffs' building. It is essential that the insured produce evidence which will afford a reasonable basis for estimating the amount of damage or the proportionate part of damage caused by a risk covered by the insurance policy. This was not done in this case.

For the reasons stated the judgment of the Court of Civil Appeals is reformed so as to provide that the judgment of the trial court be reversed and judgment rendered that plaintiffs take nothing. As so reformed, the judgment of the Court of Civil Appeals is affirmed. London Terrace Inc. v. McAlister, 142 Tex. 608, 180 S.W.2d 619 (1944).

POPE, J., not sitting.

(other than for some risks like causeways, etc.). None has been found, but we cannot say definitely that it could not be done. It seems that Lloyds of London will no longer write such coverage on normal dwellings and commercial type buildings. However, at the last time it did write such coverage it charged a premium of $8 per $100 of insurance. * * *"

2. Plaintiff's position was forcibly stated by counsel at the beginning of the trial as follows:
"I plead that a hurricane is a natural phenomenon that cannot be separated. I will be putting in evidence to show that it cannot come ashore without having wind, rain and water mixed in at the very source. The power of a hurricane is energy that comes from water. Therefore, that the policy, when it tried to exclude that, constitutes a fraud if it did not intend to insure anything less than a whole hurricane."
This position is contrary to the theory of recovery allowed by the trial courts and this Court in both McDonald v. New York Central Mutual Fire Insurance Co. and Hardware Dealers Mutual Insurance Co. v. Berglund, heretofore mentioned.