**UNITED STATES FIDELITY AND GUAR-
ANTY COMPANY, Petitioner,**

v.

**John M. MORGAN, Respondent.**

No. A–10838.

Supreme Court of Texas.

Feb. 23, 1966.

Fulbright, Crooker, Freeman, Bates & Jaworski, James S. Covington, Jr., Newton Gresham, Charles D. Boston, with above firm, Houston, for petitioner.

Baggett, Kirk, Van Keuren & Baggett, Houston, for respondent.

CALVERT, Chief Justice.

This is a Hurricane Carla case. Respondent, John M. Morgan, brought suit against petitioner, United States Fidelity & Guaranty Company, seeking a recovery on an insurance policy for damage to a cottage and to a warehouse and its contents. The trial court entered judgment for respondent upon a jury verdict and the Court of Civil Appeals has affirmed. 389 S.W.2d 516. We reform the judgments of the courts below and they are affirmed as reformed.

The insurance policy upon which suit was brought provided coverage for loss to the property directly resulting from windstorm or hurricane. However, Section III of the policy provided that the coverage was subject to the following condition:

"* * * this Company shall not be liable * * * for loss caused by * * * tidal wave, high water, or overflow, whether driven by wind or not; nor for any loss caused by rain, whether driven by wind or not, unless the wind or hail shall first make an opening in the walls or roof of the described building, and shall then be liable only for loss to the interior of the building, or the insured property therein, caused immediately by rain entering the building through such openings."

The jury found in answer to special issues that the wind made openings in the walls and roofs of respondent's cottage and warehouse before any water entered either, and that rain entering the buildings through the openings and the wind were the sole cause of the damage to the insured property. The parties stipulated that the damage sustained was $3,000.00 to the cottage, $2,250.00 to the warehouse and $1,250.00 to the contents of the warehouse.

Petitioner's principal attack on the judgment is a "no evidence" attack. It is based on an assumption that the evidence establishes conclusively that some of the damage to the insured property was caused by high water and wave action. The thrust of the argument is that in this factual situation respondent had the burden, which he did not discharge, of segregating the damage caused by the insured perils from that caused by the uninsured or excluded perils.

■ If petitioner's assumption has a sound evidentiary basis, petitioner is undoubtedly correct in asserting that the judgment must be reversed because of the absence of evidence to support the jury findings upon which it is based. See Hardware Dealers Mut. Ins. Co. v. Berglund, Tex. Sup., 393 S.W.2d 309 (1965); Paulson v. Fire Insurance Exchange, Tex.Sup., 393 S.W.2d 316 (1965); Coyle v. Palatine Ins. Co., Tex.Com.App., 222 S.W. 973 (1920). But in this case respondent has separate jury findings that the damage to each of the three items of insured property—the cottage, the warehouse and the contents of the warehouse—was solely caused by the insured perils; and since there is no suggestion that the damage was caused by a peril other than those insured or those excluded, the legal effect of the findings is that *none* of the damage to the three items of property was caused by the excluded perils. The question to be decided, then, is whether the evidence, viewed most favorably in support of the verdict, and the reasonable inferences therefrom, will support the jury's findings that the damage to the three items of property was solely caused by the insured perils and that none of it was caused by the excluded perils of tidal wave, high water or overflow.

The insured property was situated on four acres of land owned by respondent and located approximately one-half mile northeast of the town of Channelview at Market Street Road and Old River Terrace.

The warehouse was situated at the north edge of a body of water known as Old River, and the cottage was situated on much higher ground some one hundred feet north of the warehouse. The only damage of significance to either, according to the evidence, was structural; that is, there is no evidence of interior water damage to flooring, wallpaper or the like from rising water or from wind driven rain entering through openings in the roofs or walls made by the wind. With respect to the cottage and the warehouse, it is, therefore, only structural damage with which we are concerned, and we are concerned only with whether the damage was caused solely by the wind or in part by the force and wave action of the rising water.

The adverse and destructive weather conditions generated by Hurricane Carla along Texas coastal areas covered a period of four days, from September 9 through September 12, 1961. The wind as measured by the United States Weather Bureau at Galveston, the Bureau nearest the insured property, gradually increased in velocity from an early morning speed of 15 miles per hour on the 9th to 80 miles per hour in mid-afternoon of the 11th, gusting to 112 miles per hour on the 11th. It was from the northeast on the 9th and remained northeasterly until 10 o'clock p. m. on the 10th, by which time it had become easterly, and in its clockwise movement it became southeasterly in the late morning hours of the 11th. By 9 o'clock a. m. on the 10th it had reached a velocity of 47 miles per hour, gusting to 69 miles per hour. A meteorologist testified that a northeasterly wind would tend to counteract the tide and to pile it up in the west end of Old River or in San Jacinto Bay, away from the insured property. There is lay testimony indicating the presence of tornadoes in the general area, but there is no evidence of probative value that the damage to respondent's property was caused by a tornado.

The ground level of respondent's land is 33.5 feet above median sea level at its north boundary, 15.6 feet at the north wall of the cottage, 13.5 feet at the south wall of the cottage, and 3.2 feet at the water's edge of Old River. The cottage was of frame construction with ordinary windows with wood frames, and with tongue and groove pine flooring. The flooring rested on 2x6 wood joists which rested on 4x4 sills, and the sills rested on stacked concrete blocks which rested, in turn, on 4 inch concrete bases. Because of the difference in ground level, the pier under the southwest corner of the cottage consisted of four stacked concrete blocks and the pier under the southeast corner consisted of only three stacked blocks. There was no adhesive substance between the blocks. The floor level of the cottage was 17 feet above median sea level. The warehouse was constructed of corrugated sheet iron. It was 40 feet long, 8 feet high at the roof line and 13 feet high at the roof peak. The walls consisted of 8-foot strips of sheet iron nailed in vertical position to wood framework. It rested on piers which stood 11 feet above median sea level.

The maximum height of the water rising from Old River during the hurricane, as determined after the hurricane by the highest debris line, was 17.5 feet above median sea level, and thus was 6.5 feet above the top of the warehouse piers and .5 of a foot above the floor level of the cottage. It was 4 feet deep at the south wall of the cottage.

Respondent inspected his property on September 13th, the day after the hurricane ended. The warehouse was totally destroyed. Only one end of it remained at the site, lying against the piers. The rest of the metal was scattered over an adjoining area, some up to a distance of two or three hundred feet. The strips of corrugated iron had been stripped froom the nail heads, unbent. All but three of the piers under the cottage had fallen. Of the three standing, one was under the southwest corner, one was under the center and one was near the northeast corner. The southeast corner of the cottage, the corner nearest to the water, was down, and the northwest corner was raised up off the piers, "causing the structure to be arched over three piers across the center." Water to a depth of four inches had en-

tered the part of the house which was down, but the rug in the north part was dry. The house was shoved against a cyclone fence and was "badly racked and warped"; the flooring was loose and part of it was gone; the west half of the south wall containing three windows and a door was completely gone, and the sash and the panes were out of three windows on the east half of the wall; the partitions were pulled loose from the floor joists and pushed out of place, and the center partition wall was pulled loose from the exterior wall. A tree only a few feet from the cottage was broken off about 8 or 9 feet above the ground, and other trees nearby were stripped of branches and foliage far above ground level.

Two witnesses testified that they visited the property adjoining respondent's property at about 11 o'clock a. m. on the 10th. They saw that the rising water had at that time reached only to the top of the piers supporting the warehouse; that the roof was off the warehouse and was lying upside down on an adjoining lot; and that some of the sheet metal strips on the standing walls were loose and flapping in the wind.

■ We conclude that the evidence summarized furnishes a reasonable basis for the jury's findings that the damage to the warehouse and cottage was solely caused by the wind. The evidence of that ultimate fact is largely circumstantial. It may be that a permissible inference that some of the damage was caused by the force and wave action of the rising water could have been drawn by the jury from the evidence, but we cannot say that the inference that all of the damage was caused by the wind was impermissible or was not the more reasonable. There is direct testimony that the warehouse was practically destroyed by wind before it was reached by rising water or wave action, and the jury could reasonably have concluded that the velocity of the wind alone completed the destruction from the fact that the strips of sheet iron were stripped from the nail heads, unbent. Most of the structural damage to the cottage was undoubtedly caused by its being toppled from its piers. The jury could not know from the evidence with certainty that it was toppled by the wind rather than by the pressure exerted against the piers by wave action of the rising water or by a combination of the two, and neither can we; but considering the extensive damage done by the wind far above the water level, the shallow depth of the water at the cottage site, the absence of any direct evidence of strong wave action against the piers, and the testimony of petitioner's own witness that the pier under the southwest corner of the cottage, left standing, was more vulnerable to wave action than was the pier under the southeast corner, which was down, the jury was well within its province in concluding that it was toppled by the wind alone. One of the photographs of the cottage indicates that a small amount of damage was done by the water to the paint on the lower strips of siding on the south side of the cottage, but we consider this damage as insignificant when considered in context with the entire damage.

■ The damage to the contents of the warehouse presents an entirely different problem. Heavy rain was falling on the contents after the roof of the warehouse was blown off by the wind. On the other hand, they were completely inundated by the rising waters. Some items were missing after the water subsided. Others were damaged by rust and corrosion. Whether the missing items were blown away by the wind or were washed away by rising water is, of course, not shown. Neither is there evidence that the rust, corrosion and other damage to machinery, tools, electric appliances and other objects were caused by falling rain rather than by rising water or by a combination of the two. There is, therefore, no evidence of probative value in the record supporting the jury's finding that the damage to the contents of the warehouse was solely caused by rain entering through the open top of the warehouse or by the wind. Under authority of the three decisions hereinabove cited, the judgment

for damages to the contents of the warehouse cannot stand. Moreover, it is clear from the record that no good purpose would be served by severing this phase of the suit and remanding it to the trial court for a new trial.

■ Petitioner presents two other points of error which, if sustained, would require that the entire judgment be reversed and the cause be remanded to the trial court for retrial. One of the points asserts that the trial court erred in excluding evidence that respondent's property suffered no significant damage from Hurricane Debra which occurred some two years before Hurricane Carla and which also produced strong winds but was not accompanied by flood water. The other asserts that the trial court erred in failing to submit requested issues inquiring separately as to each of the three items of property whether the jury found from a preponderance of the evidence (1) that "no damage * * * was caused by or resulted from tidal wave, high water, or overflow, whether driven by rain or not"; and, conditioned on an answer that damage was so caused, (2) the percentage of damage which was caused by or resulted from these excluded perils. The same points were presented to the Court of Civil Appeals and were overruled. We also overrule them, principally for the same reasons given by the Court of Civil Appeals.

The maximum coverages provided by the policy were $3,500.00 for loss or damage to the cottage, $2,500.00 for loss or damage to the warehouse, and $1,500.00 for loss or damage to the contents of the warehouse. As heretofore noted, the parties stipulated that the damage sustained was $3,000.00 to the cottage, $2,250.00 to the warehouse and $1,250.00 to the contents of the warehouse, all well within the maximum limits of the coverages and totalling $6,500.00. For some reason, unexplained in the record, the trial court's judgment awarded a recovery by respondent of $6,300.00 with interest thereon from January 17, 1962, at the rate of 6%

per annum. Respondent did not appeal from the judgment and has not complained of the amount of the damages awarded. The judgment must therefore be reformed by reducing the recovery awarded by $1,250.00 and awarding a recovery of $5,050.00. As thus reformed, the judgments of the trial court and the Court of Civil Appeals are affirmed.