The **TRAVELERS INDEMNITY COMPANY, Appellant,**

v.

**Troy L. McKILLIP et ux., Appellees.**

**No. 4408.**

Court of Civil Appeals of Texas, Eastland.

Aug. 28, 1970.

Aubrey L. Roberts, Mays, Moore, Dickson & Roberts, Sweetwater, for appellant.

Turner & Seaberry, Eastland, for appellees.

COLLINGS, Justice.

Troy L. McKillip and wife brought suit against The Travelers Indemnity Company to recover on an insurance policy issued by the defendant insuring plaintiff's turkey barn against loss by windstorm but excluding damage caused by snowstorm. Plaintiffs alleged that they had sustained a loss caused by a windstorm on November 2, 1968. The defendant answered denying that the loss suffered by plaintiffs was occasioned by any peril covered by the policy of insurance sued upon and further alleged that a snowstorm on November 8, 1968, the day the structure fell, was the cause of plaintiffs' damage. The case was tried before a jury and based upon the verdict judgment was rendered for the plaintiffs in the sum of $7,450.00. The Travelers Indemnity Company, hereinafter referred to as Travelers, has appealed.

The record shows that appellee McKillip's turkey house was struck by a windstorm on November 2, 1968; that a snowstorm came on November 8, 1968, and that thereafter on the same day the turkey house collapsed. In answer to special issues submitted the jury found that (1) appellee's turkey house was damaged by a windstorm on November 2, 1968, (2) that such windstorm was the dominant efficient cause of the collapse of appellee's barn, although other causes may have contributed

thereto, (3) that the fair market value of the building in question immediately prior to the windstorm was $11,400, (4) that the fair market value of the building after the windstorm was $2,000, (5) that the fair market value of the building immediately after it collapsed on November 8, 1968, was $2,000, (6) that the reasonable and necessary cost to repair or replace appellee's building after the windstorm of November 2, 1968 with material of like kind and quality within a reasonable time after the loss was $7,500, (7) that the reasonable and necessary cost to repair and replace appellee's building after its collapse on November 8, 1968, with material of like kind and quality within a reasonable time after the loss was $7,500, (8) that the damage to appellee's said building "was directly caused by windstorm" and (9) that the damage to the building was not caused solely by the weight of the snow thereon.

As heretofore noted the jury found in answer to special issues 1, 2, 8 and 9 that appellees' turkey house was damaged by the windstorm of November 2nd, that such windstorm was the dominant efficient cause of the collapse of the building on November 8, 1968, that the damage to the structure was directly caused by the windstorm and that the damage was not caused solely by the weight of the snow. In several points appellant contends that such answers are not supported by any evidence; that the evidence is insufficient to support such answers, and that they are against the great weight and preponderance of the evidence. In our opinion there was ample evidence to support such jury findings. Appellant's points urging to the contrary are overruled.

■ The record shows that appellees live on a turkey farm about one and a half miles southeast of Desdemona. It is undisputed that there was a windstorm on November 2, 1968 which took a definite path across appellees' property. The storm entered the northwest portion of appellees' property where Texas Electric Service Company and the REA had poles located

slightly northwest of appellees' turkey house, hereafter referred to as building number 1. The path of the storm passed over and across building 1 and then proceeded in a southeasterly direction over appellees' home and yard and between two other poultry houses, referred to as buildings 2 and 3. The force of the wind pushed the Texas Electric pole to the southeast. The REA pole was guyed so as to prevent movement to the southeast. The TV antenna at plaintiffs' home was twisted. Steel posts around the yard enclosure were bent flat and telephone service to the house was disrupted. Tree limbs as big as a man's leg were broken off and blown 100 to 150 feet away, and an electric line about the size of a man's little finger running between buildings 2 and 3 was broken. There was no snow accompanying the windstorm.

The evidence supports the conclusion that the windstorm in question damaged appellees' number 1 poultry building but that it passed between and did not injure their poultry buildings 2 and 3. Buildings 1 and 2 were built from the same general plan using steel trusses, known as econ-a-frames, and were almost identical except as to length and roof support. Both were sheet metal buildings with cellotex insulation under the sheetiron on the walls. Building 1 also had cellotex under the sheetiron on the roof. Building 1 was 408 feet long by 40 feet wide and building 2 was the same width but 40 or 50 feet less in length. Building 1 had more than twice as many purlins as building 2, the spacing between them being 2 feet on building 1 and 4 feet on building 2. The roof on building 1 should have been stronger than building 2. Building 2 had 20,000 pounds of equipment suspended from the purlins while building 1 had no suspended weight although it did have an equivalent weight of cellotex insulation under the sheetiron roof. Building 2 was not damaged by the windstorm nor was it damaged by the snow. Building 3 was an old rebuilt wooden building without the steel support of buildings 1 and 2, and was not as sub-

stantial a building as building number 2. Building 3 also had 20,000 pounds of weight suspended from the roof or ceiling and it likewise was not damaged by either the windstorm or the snow.

As heretofore noted the snow of November 8, 1968, was only 4 or 5 inches. There was evidence to the effect that buildings 1, 2 and 3 had theretofore been exposed to a heavier snow including one storm with two inches of ice and 4 to 6 inches of snow. None of the buildings had been damaged thereby. Appellant's expert witness, Parrish, testified that 5 inches of extremely wet snow would weigh about 12 pounds per square foot, that ice would weigh twice as much, and that 5 inches of light snow would weigh 1¼ pounds per square foot. There was no evidence to show whether the snow of November 8, 1968 in Desdemona was of the heavy or light snow variety. The same snow fell on all three buildings on November 8th and only building 1 collapsed. Parrish testified that buildings such as buildings 1 and 2 had a maximum load limit of 7.15 pounds per square foot.

Under the computation of Parrish the prior ice and snowstorm should have collapsed not only building 1 but also buildings 2 and 3. However, none of the buildings were damaged by the prior snowstorm. Only building 1 was involved in the windstorm of November 2 and it thereafter collapsed. Building 1 was not being used at the time and McKillip had no occasion to inspect it after the windstorm and prior to the snow. After the building collapsed, however, it was noted that the south wall of the building had shifted to the east. Appellee McKillip and the witness McMasters, a carpenter of over 25 years experience testified that in their opinion the damage to the building in question was the result of the windstorm. The facts and circumstances in evidence, as above set out in substance, support their opinion and the findings complained of. Insurance Company of North America v. Pittser, 399 S.W.2d 901 (Tex.Civ.App.1965, ref. n. r. e.), and cases cited therein. Considering the evidence as a whole such findings are not against the great weight and preponderance of the evidence.

Appellant's contention concerning the lack and insufficiency of the evidence to support the verdict, and that the verdict is contrary to the great weight and preponderance of the evidence is based largely upon the asserted premise that no predicate was laid for the introduction of the opinion testimony of appellees' witness McMasters and that his testimony therefore should not be considered; that the record shows appellant's witness, Parrish, is a professional and registered structural engineer of 25 years experience and an instructor in structural failures at the Air Force Technical Institute at Dayton, Ohio, and that his testimony constitutes the only unchallenged evidence in the case, and is controlling. McMasters was a carpenter of 25 years experience. He built building number 2 and helped in the construction of building 3. He was familiar with all three buildings, and built building 2 according to the same general plan that building 1 was constructed. His testimony and that of appellee McKillip, together with the facts and circumstances in evidence support the findings of the jury.

■ Special issue number 2 of the court's charge inquired whether the windstorm on November 2, 1968, was the dominant efficient cause of the collapse of building 1 on November 8, 1968, "although other causes may have contributed thereto." The jury answered this issue in the affirmative. Appellant objected to the submission of issue number 2 contending that it was multifarious and amounted to a comment on the weight of the evidence, and urges on appeal that the court erred in overruling its objections. We overrule the point. In Fidelity Southern Fire Insurance Company v. Crow, 390 S.W.2d 788 (Tex.Civ.App.), it is stated that

"* * * the rule in Texas is to the effect that where a loss occurs under

a standard fire, windstorm and extended coverage policy within the coverage of the policy, and such loss is contributed to by an excluded risk of the policy, the plaintiff may, nevertheless, recover if plaintiff proves that the dominant efficient cause of the loss is the covered risk."

Special Issue number 2 was submitted in compliance with the above stated rule. It is also noted that other special issues including number 8 of the court's charge support the judgment. Other issues also, in effect, inquired concerning the amount, if any, contributed by the snow to the collapse of the building. The issue was not a comment on the weight of the evidence.

Special issues number 6 and 7 of the court's charge were as follows:

### "SPECIAL ISSUE NO. 6:

From a preponderance of the evidence, what do you find to be the reasonable and necessary cost, if any, in Eastland County, Texas, to repair or replace the building of plaintiffs in question after the windstorm, if any, of November 2, 1968, with material of like kind and quality within a reasonable time after the loss, if any. Answer in dollars and cents, if any.

$7500."

### "SPECIAL ISSUE NO. 7"

From a preponderance of the evidence, what do you find to be the reasonable and necessary cost, if any, in Eastland County, Texas, to repair or replace the building of plaintiffs in question after the collapse of said building on or about November 8, 1968, with material of like kind and quality within a reasonable time after the loss, if any?

$7500."

Appellant objected to the above issues on the ground that there was no evidence to warrant their submission. Appellant urges points contending that there is no evidence to support the finding that the cost of repair or replacement of plaintiffs' building after the windstorm of November 2, 1968, was $7,500; that the evidence is insufficient to support the finding that the cost of repairs or replacement of plaintiffs' building after the windstorm of November 2, 1968, was $7,500; that there is no evidence to support the finding that the cost of repairs or replacement of plaintiffs' building after the collapse on November 8, 1968, was $7,500, and that the evidence is insufficient to support such finding. Issues 6 and 7 were submitted in such manner that if both the windstorm and the snow contributed to the collapse of plaintiffs' building there could be a segregation of the damages. The jury found, however, that the cost of repair after the windstorm was the same as it was after the snow, and found in other issues that the damage to the building was directly caused by the windstorm and in effect that none of it was caused by the snow. The jury found that the value of building in question was the same immediately after the windstorm as it was immediately after the snow and its collapse on November 8, 1968.

It is undisputed that building 1 did not collapse until after the snow. Appellant contends that in as much as no examination was made of the building between the windstorm and the snow there was no way of determining the cost of repairs following the windstorm and before the snow. We cannot agree with this contention. The evidence shows that the value of the building before the windstorm was $11,400 and that its value after the collapse was $2,000. Buildings 2 and 3 were not damaged by the wind as was building 1. Buildings 2 and 3 were not as strong as building 1 yet neither of them collapsed after the snow or showed any indication of damage. There was evidence that after the collapse of the building the south wall had shifted to the east. This evidence, together with other facts and circumstances supports the conclusion that the windstorm was the dominant efficient cause of the collapse of building 1, and that the cost of repair would be substantially the same before and after the snow. Appellee McKillip and the witness McMasters stated that in their opinion the damage to the building was the

result of the windstorm. The facts and circumstances in evidence support their opinion in spite of the fact that there was no examination of the building between the windstorm and the snow.

Appellant presents points complaining of the action of the court in refusing to give its requested special issues inquiring (a) whether the damage to appellees' building was caused by a combination of the wind and weight of the snow, and if so, the percentage of the damage caused by the snow, and (b) whether the damage to appellees' building was caused solely by the weight of the snow. These points are overruled. The matters inquired about therein were submitted in other issues of the court's charge with the burden of proof properly placed. A trial court is not required to submit various and different shades of the same issue. Rule 279 Texas Rules of Civil Procedure. The manner of the submission of such issues in the charge constituted an effective means of segregating the damages and was proper. Providence Washington Ins. Co. v. Cooper, 223 S.W.2d 329, (Tex.Civ.App. 1949, ref. n. r. e.); Fidelity Southern Fire Insurance Co. v. Crow, 390 S.W.2d 788, (Tex.Civ.App.1965, ref. n. r. e.). Appellant's points are all overruled.

The judgment is affirmed.