The TRAVELERS INDEMNITY CO.,
Petitioner,

v.

Troy L. McKILLIP et ux., Respondents.

No. B–2399.

Supreme Court of Texas.

May 19, 1971.

Dissenting Opinion July 14, 1971.

Rehearing Denied July 14, 1971.

Mays, Moore, Dickson & Roberts, Aubrey L. Roberts, Aubrey L. Roberts, Jr., Sweetwater, for petitioner.

Turner & Seaberry, Virgil T. Seaberry, Jr., Eastland, for respondents.

DENTON, Justice.

Respondents, Troy L. McKillip and wife brought this action against the Travelers Indemnity Co. to recover for damages to their poultry house under the terms of a policy of insurance issued by that Company. After a trial to a jury, respondents were awarded a recovery for $7,450. This judgment was affirmed by the Court of Civil Appeals. 458 S.W.2d 532. We reverse the judgments of the courts below, and remand the cause for a new trial.

The insureds were the owners of a turkey farm in Eastland County, which included two sheet metal buildings and a wooden building used as conditioning houses for breeder turkeys. The one damaged building was of steel truss type construction, 408 feet long by 40 feet wide. The other two buildings, located some distance from the damaged building, were undamaged. The second building was essentially of the same construction as the damaged building and was some fifty feet shorter. the third building was of wooden construction.

There was testimony of "a tremendous wind" on the McKillip farm on November 2, 1968. According to the insured's testimony the wind took an "obvious path" across his property and struck the turkey barn alleged to have suffered the damage. There is no contention the wind struck or damaged the other two turkey barns located on the same property. Following this windstorm no inspection was made of the building involved here, and by the insured's own testimony no apparent damage was detected. It is undisputed the wind twisted the insured's television antenna fixed to his home, disrupted the telephone service, broke large tree limbs and bent some steel posts around their yard enclosure. The wind also broke a large electric wire connecting two of these buildings. On November 8, 1968, six days later, a four or five inch snow fell on the McKillip farm and the one building collapsed.

The jury found (1) the turkey barn was damaged by a windstorm on November 2, 1968, (2) that such windstorm was the dominant efficient cause of the collapse of the building, although, other causes may have contributed thereto, (3) the fair market value of the building immediately prior to the windstorm was $11,400, (4) the fair market value of the building immediately after the windstorm was $2,000, (5) the fair market value of the building immediately after it collapsed on November 8, 1968, was $2,000, (6) the reasonable and necessary cost to repair or replace the building after the windstorm was $7,500, (7) that the reasonable and necessary cost to repair or replace the building after its collapse November 8, 1968, was $7,500, (8) that the damage was directly caused by windstorm, (9) the damage was not caused solely by weight of the snow. Judgment was rendered on the verdict for the respondents in the amount of $7,450.

The policy purchased by Mr. and Mrs. McKillip from Travelers insured them against "direct loss resulting from any of the perils (listed below) *. * * E.— Extended Coverage * * * Windstorm, Hurricane, Hail, Explosion, Riot, Civil Commotion, Smoke, Aircraft and Land Vehicles." Under "Specific Coverage Condition," appears the following exclusionary clause: "conditions applicable only to Windstorm, Hurricane, and Hail: Unless specifically named hereon this company

shall not be liable for loss to metal smoke-stacks * * * nor (b) by snowstorm. * * *"

The insurance company pleaded the specific exclusion of loss by snowstorm set out in the policy. This pleaded exclusion thus raised the issue of coverage. The insureds had the burden to prove that their loss was not attributable to the pleaded excluded hazard. Sherman v. Provident American Ins. Co., 421 S.W.2d 652 (Tex.1967); Hardware Dealers Mut. Insurance Co. v. Berglund, 393 S.W.2d 309 (Tex.1962); Rule 94 T.R.C.P.

Travelers having plead the exclusion under the policy of loss by snowstorm, the insureds were obligated to introduce evidence to prove and secure jury findings that the damage was caused solely by the windstorm, an insured peril; or segregating the damage caused by the insured peril from that caused by the snowstorm, an excluded peril. This construction of the exclusionary clause is well settled in Texas. Coyle v. Palatine Ins. Co., Tex. Com.App., 222 S.W. 973 (1920); Hardware Dealers Mut. Ins. Co. v. Berglund, supra; Paulson v. Fire Ins. Exchange, 393 S.W.2d 316 (Tex.1965).

The case was submitted to the jury and judgment rendered in the trial court upon the theory that if the windstorm was the dominant efficient cause of the building's collapse, although other causes may have contributed to the loss, the insurer was liable. This theory of submission was approved by the Court of Civil Appeals upon the authority of Fidelity Southern Fire Ins. Co. v. Crow, (Tex.Civ.App.) 390 S.W.2d 788 (writ ref'd n. r. e.). The court quoted with approval the following rule of law announced in Crow:

" * * * the rule in Texas is to the effect that where a loss occurs under a standard fire, windstorm and extended coverage policy within the coverage of the policy, and such loss is contributed to by an excluded risk of the policy, the plaintiff may, nevertheless, recover if plaintiff proves that the dominant efficient cause of the loss is the covered risk."

In support of this rule Crow cited Providence Washington Ins. Co. v. Cooper, (Tex. Civ.App.) 223 S.W.2d 329; Berglund v. Hardware Dealers Mutual Fire Insurance Company, (Tex.Civ.App.) 381 S.W.2d 631. Berglund was subsequently reversed by this court on the ground the Court of Civil Appeals placed an erroneous construction upon the exclusionary clause. See 393 S.W.2d 309. Nor does Cooper support the rule announced in Crow. In Cooper the insurer failed to plead the specific exclusion of loss by snowstorm set out in that policy. Thus damages which were admittedly caused by snow, the excluded risk, did not become an ultimate issue under that record. We conclude the construction placed upon the exclusionary clause of the insured's policy by the trial court and the Court of Civil Appeals in the present case was improper. Such construction is contrary to the well settled rule of construction established in Coyle v. Palatine Ins. Co., supra, and uniformly followed by this Court. Hardware Dealers Mut. Ins. Co. v. Berglund, supra; Paulson v. Fire Ins. Exchange, supra; United States Fidelity and Guaranty Co. v. Morgan, 399 S.W.2d 537 (Tex.1966). In the present case we think the evidence will support a finding that a portion of plaintiff's loss was the result of the weight of the snowstorm, an excluded peril. The testimony of Charles W. Parish, a structural engineer, demonstrates this. In view of the pleading of the exclusionary clause and the evidence, the trial court erred in refusing to submit the defendant's requested special issue inquiring whether damage to plaintiff's building was caused by a combination of the wind and the weight of the snow, and if so, the percentage or the proportionate part of the damage caused by the snow. Hartford Fire Insurance Co. v. Christianson, (Tex. Civ.App.) 395 S.W.2d 53 (writ ref'd n. r. e.).

The general theory of segregating the damages caused by the wind and excluded peril was set forth in the submission of the damage issues. The jury was asked to determine the market value of the building immediately prior to and after the windstorm; and its value after the building collapsed on November 8; and the cost of repairs or replacement of the building immediately after the windstorm, and the same inquiry immediately after its collapse six days later. The jury found the reduced market value was the same after the windstorm and the snowstorm; and the cost of repair or replacement after both occurrences was the same.

█ The evidence is undisputed that a windstorm took an "obvious path" across the insured's property and struck the turkey barn on November 2, 1968. The structure remained standing after the wind, and sustained no apparent damage. No inspection was made of the barn until it collapsed six days later following the snowstorm. It is the position of the insured that the legal effect of these findings is that the damages were wholly attributable to the windstorm. Assuming this to be a correct contention, the question then is whether the evidence, viewed most favorably in support of the verdict, will support the jury findings that the damage to the insured's barn was caused solely by the insured peril of windstorm, and that none of it was caused by the snow. United States Fidelity Guaranty Co. v. Morgan, supra.

There was no evidence relating to the direct effect of the wind on the damaged building, nor did anyone attempt to estimate the damage caused by wind action independent of all other causes. There is a complete absence of evidence concerning the fair market value of the building immediately after the windstorm; or of the cost to repair or replace it immediately after the windstorm. Evidence of costs of repairs was related solely to the building's condition after the snowstorm and collapse.

It is essential that the insured produce evidence which will afford a reasonable basis for estimating the amount of damage or the proportionate part of damage caused by a risk covered by the insurance policy. Paulson v. Fire Ins. Exchange, supra. The insured has failed to do so.

The judgments of the courts below are reversed and the cause remanded to the district court for a new trial.

STEAKLEY, J., concurs in this opinion.

POPE, Justice (dissenting).

I respectfully dissent. There is evidence which supports the jury's answers to the controlling issues. The opinion of the court of civil appeals has summarized that evidence, and it need not again be repeated. I also disagree with the majority's discussion about the correct manner of submitting issues in a case concerning the separation of damages caused by an included risk from those caused by an excluded risk.

This case was tried upon issues used in Fidelity Southern Fire Ins. Co. v. Crow, 390 S.W.2d 788 (Tex.Civ.App.1965, writ ref. n. r. e.). In that case an unnecessary issue was submitted which inquired whether the included risk was the dominant efficient cause of the damages. The holding of the court, however, was not grounded upon that finding, as the majority mistakenly states. The issue and the finding were unnecessary to the judgment because the insured also obtained findings which separated the damages caused by the included risk from those caused by the excluded risk. This is the holding in Crow:

The rule in Texas is that where a loss is occasioned by a risk which is within the coverage of the policy, and a risk which is within the exclusion of the policy, that plaintiff may recover if plaintiff is able to segregate the damages oc-

casioned by the covered risk from the damage occasioned by the excluded risk within the exclusion of his policy. (This the jury did). See Franklin Fire Ins. Co. of Philadelphia v. Smith, Tex.Civ. App., 103 S.W.2d 470; 93 A.L.R.2d 145, p. 165, 166–171. We also think that the rule in Texas is to the effect that where a loss occurs under a standard fire, windstorm and extended coverage policy within the coverage of the policy, and such loss is contributed to by an excluded risk of the policy, the plaintiff may, nevertheless, recover if plaintiff proves that the dominant efficient cause of the loss is the covered risk.

The court in *Crow* said that the finding on dominant efficient cause was an additional reason for upholding the judgment. I agree that the statement is not a correct statement of the law, but that was not the controlling holding of the court. The issue and the finding were immaterial to the result. The same is true in this case in which McKillip, following *Crow* as the best available guide, requested issues and obtained findings which (1) separated the damages and (2) inquired about the dominant efficient cause. As in *Crow*, the finding about dominant efficient cause was immaterial.

This court, writing in Paulson v. Fire Insurance Exchange, 393 S.W.2d 316 (1965) expressed the view that an insured had the burden of separating damages, and that this could be done in either of two ways. We then wrote:

> It is essential that the insured produce evidence which will afford a reasonable basis for estimating the amount of damage *or* the proportionate part of the damage caused by a risk covered by the insurance policy. This was not done in this case. (Emphasis added).

I would affirm the judgments of the courts below.