CIRCLE C v. ST. PAUL INS 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 



ON MOTION FOR REHEARING


 




NO. 3-91-388-CV





CIRCLE "C" RANCH COMPANY,



 APPELLANT


vs.





ST. PAUL FIRE AND MARINE INSURANCE COMPANY,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT



NO. 400,098, HONORABLE PETER M. LOWRY, JUDGE PRESIDING



 





 On motion for rehearing, our prior judgment and opinion of October 7, 1992, are
withdrawn and the following is substituted therefor.

 Appellant, Circle "C" Ranch Company (Circle "C"), obtained a jury verdict
against its excess insurance carrier, St. Paul Fire and Marine Insurance Company (St. Paul),
appellee, requiring St. Paul to pay part of a settlement which Circle "C" reached in a separate
lawsuit. The trial court, on motion of St. Paul, rendered judgment non obstante veredicto (NOV),
on the basis of the statute of limitations and a policy exclusion precluding insurance coverage. 
We will reverse the trial court's judgment.



BACKGROUND


 This case reaches us with a simple factual scenario but an extremely complex
procedural history. In 1977, Circle "C" was involved in aerial spraying at a ranch property it
leased in Anderson County, Texas. Two cotton farmers sued Circle "C", alleging that drift from
Circle "C"'s spraying injured their cotton crops. Circle "C" submitted the lawsuits as a claim to
its insurance companies. At that time, Safeco Insurance Company (Safeco) was Circle "C"'s
primary liability carrier and St. Paul was its excess carrier. The Safeco policy had a limit of
$500,000; the St. Paul policy had a limit of $1,000,000. Both insurers denied coverage, although
Safeco defended Circle "C" under a non-waiver agreement. In 1978, Safeco filed Cause No.
272,145, a declaratory judgment action against Circle "C" to determine the coverage question. 
Circle "C" answered, counterclaimed against Safeco, and requested that St. Paul be joined in the
lawsuit. Safeco complied with the request and joined St. Paul. St. Paul answered and denied
coverage of Circle "C"'s claim based on an exclusion in its policy. All three parties to Cause No.
272,145 then agreed to delay any action pending the outcome of the lawsuits filed by the cotton
farmers against Circle "C". Those lawsuits settled in 1982. As part of the settlement, Circle "C"
agreed to pay the cotton farmers $30,000 of their alleged damages. (1) In regard to Cause No.
272,145, Safeco settled with Circle "C" by agreeing to reimburse $15,000 of Circle "C"'s
payments to the farmers, without admission of liability under its policy. (2) 

 In April 1983, Circle "C" filed a second amended original answer and counterclaim
in Cause No. 272,145 asking for damages from St. Paul based on breach of contract. In 1985,
the Travis County district clerk placed Cause No. 272,145 on the dismissal docket, but the cause
was retained on Circle "C"'s motion. The lawsuit was reset on the dismissal docket and actually
dismissed on September 16, 1985. (3)

 On June 30, 1986, Circle "C" filed Cause No. 400,098, seeking damages and a bill
of review to set aside the dismissal order in Cause No. 272,145. The trial court considered the
bill of review and submitted to the jury the issue of damages for breach of contract. The jury
returned a verdict setting Circle "C"'s damages. The trial court granted the bill of review but,
after a motion for judgment NOV, found that the four-year statute of limitations barred the breach
of contract claim against St. Paul and further found that the exclusion pleaded by St. Paul in
defense to coverage barred liability under the policy.

 Circle "C" brings two points of error on appeal:  first, that the trial court erred in
granting the motion for judgment NOV and, second, that the trial court erred in failing to render
judgment on the verdict for Circle "C". We will discuss these points together.



DISCUSSION AND HOLDING



Statute of Limitations

 Circle "C" contends that the trial court erred in granting the motion for judgment
NOV based on St. Paul's statute of limitations defense. Circle "C" argues that the statute of
limitations does not bar this suit for two reasons. First, although the second amended answer and
counterclaim asserted a new theory of recovery against St. Paul, i.e., breach of contract, it was
still based on the same transaction as the original counterclaim and the pleadings related back to
that original counterclaim, which was filed within four years of St. Paul's denial of coverage. 
Second, because the St. Paul policy is an indemnity policy, the statute of limitations did not start
running when St. Paul refused coverage but only when the settlement completely established the
amount of the loss. Because we find the relation-back argument compelling, we need not address
the indemnity argument.

 Amended pleadings changing the grounds for liability are specifically allowed to
relate back to prior pleadings as long as the amended pleading is not wholly based on a new,
distinct, or different transaction or occurrence. Tex. Civ. Prac. & Rem. Code Ann. § 16.068
(West 1986); see also Ex Parte Goad, 690 S.W.2d 894, 896-97 (Tex. 1985). (4) Both the
declaratory judgment claim and the breach of contract claim involved the same transaction: 
St. Paul's denial of coverage for the lawsuits brought by the cotton farmers. Since the same
transaction was involved, the amended pleading related back to the earlier pleading that was
timely, and, therefore, the statute of limitations did not bar Circle "C"'s claim. However, this
holding does not dispose of the trial court's judgment NOV since there were two independent
grounds given to support the judgment.



Coverage Under the St. Paul Policy

 In its defense to liability under the excess policy, St. Paul pleaded Exclusion (j)
from that policy. Exclusion (j) states that the policy does not apply:



to personal injury or property damage arising out of the discharge, dispersal,
release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals,
liquids or gases, waste materials or other irritants, contaminants or pollutants into
or upon land, the atmosphere or any watercourse or body of water; but this
exclusion does not apply if such discharge, dispersal, release or escape is sudden
or accidental . . . .



 The policy exclusion in issue is commonly known as the "pollution exclusion
clause." See William B. Johnson, Annotation, Construction and Application of Pollution
Exclusion Clause in Liability Insurance Policy, 39 A.L.R.4th 1047, 1049 n.1 (1985). This appeal
presents important questions of first impression in Texas (5) regarding the meaning of various terms
in the "pollution exclusion clause" which has become a standard part of post-1970 comprehensive
general liability insurance policies.

 The St. Paul policy in question promises to "indemnify the insured for all sums
which the insured shall become legally obligated to pay as . . . [Property Damage] . . . caused
by an occurrence." An "occurrence" is defined in the policy as "an event . . . neither expected
nor intended from the standpoint of the insured." (emphasis added). While the St. Paul policy
also contains the "pollution exclusion clause" that disclaims coverage for "property damage arising
out of the discharge, dispersal, release or escape of" various pollutants, it is important to note that
the exclusion is not absolute. Rather, the "pollution exclusion" contains an exception providing
coverage where the pollutant discharge is "sudden and accidental." Numerous courts in other
jurisdictions have addressed the meaning of the phrase "sudden and accidental," and the majority
of them have construed the phrase to mean "unexpected and unintended." See Hecla Mining Co.
v. New Hampshire Ins. Co., 811 P.2d 1083, 1091 (Colo. 1991) (en banc); Just v. Land
Reclamation, Ltd., 456 N.W.2d 570, 575 (Wis. 1990); see also Johnson, supra, at 1051-62 (and
cases cited therein). Thus, this clause is commonly construed so as to exclude coverage for
damage caused by various sorts of pollution if the damage was expected or intended, but it is
construed so as to provide coverage if the incident was unexpected or unintended. Just, 456
N.W.2d at 575. In so construing the clause, some courts have expressly recognized that they are
essentially reading the pollution exclusion clause in a manner consistent with the policy's
definition of "occurrence." E.g., United Pac. Ins. Co. v. Van's Westlake Union, Inc., 664 P.2d
1262, 1266 (Wash. Ct. App. 1983).

 St. Paul alleged in the trial court that the claim brought by Circle "C", based on
its settlement with the cotton farmers, was for an event which fell within the pollution exclusion
clause because the claim involved discharge, dispersal, or release of toxic chemicals which was
not "sudden or accidental." Circle "C" responded that the meaning of "sudden or accidental" was
ambiguous and should be construed by the court to favor the insured and coverage, citing Ramsay
v. Maryland American General Insurance Co., 533 S.W.2d 344, 349 (Tex. 1976) and Continental
Casualty Co. v. Warren, 254 S.W.2d 762, 763 (Tex. 1953).

 It has been a long-standing rule of Texas law that "if a contract of insurance is
susceptible of more than one reasonable interpretation, we must resolve the uncertainty by
adopting the construction that most favors the insured." National Union Fire Ins. Co. v. Hudson
Energy Co., Inc., 811 S.W.2d 552, 555 (Tex. 1991); accord, Blaylock v. American Guar. Bank
Liab. Ins. Co., 632 S.W.2d 719, 721 (Tex. 1982); Glover v. National Ins. Underwriters, 545
S.W.2d 755, 761 (Tex. 1977).

 Moreover, "exceptions or limitations on liability are strictly construed against the
insurer and in favor of the insured . . . and [a]n intent to exclude coverage must be expressed in
clear and unambiguous language." National Union, 811 S.W.2d at 555 (emphasis added). 
Additionally, a "court must adopt the construction of an exclusionary clause urged by the insured
as long as that construction is not unreasonable, even if the construction urged by the insurer
appears to be more reasonable." Id. (emphasis added).

 Applying this applicable standard of review and considering the case authority
construing the pollution exclusion clause in question, we conclude that the most reasonable legal
interpretation, in harmony with the "occurrence" clause in the policy, is that the exclusion only
applies where the pollution was intentional or expected. Conversely, viewed from the perspective
of the insured, where the pollution is neither intended nor expected, i.e., "sudden and accidental,"
the exclusion does not apply and coverage is afforded.

 In the trial court, St. Paul successfully argued in its motion for judgment NOV that
by failing to present any evidence that the loss did not fall within the pleaded exclusion and by
failing to submit a jury question on liability, Circle "C" had waived its right to recover. At the
close of the evidence, Circle "C" submitted no issue on St. Paul's liability under the policy for
the event on which Circle "C"'s claim was based. (6) St. Paul objected to the lack of an issue on
whether the claimed event was covered by Exclusion (j).

 Circle "C" contends on appeal that the facts are uncontroverted, and, therefore, it
was not necessary to submit a jury issue on the applicability of the exclusion. Viewing the
testimony in light of the construction we place upon the pollution exclusion clause, we agree. 
Circle "C" presented the testimony of two of its owner-partners. One of the partners testified that
he did not expect or intend to damage any cotton crops. The other partner testified that when he
hired the aerial sprayer, he requested a no-drift chemical and that he did not expect to damage any
cotton crops. This testimony was uncontroverted by St. Paul. While it is true that the testimony
of the Circle "C" partners was from interested witnesses, St. Paul's own insurance policy, in its
definition of the word "occurrence" requires that the determination of whether an event is
expected or intended be made "from the standpoint of the insured." Moreover, the partners'
testimony was clear, direct, and positive, and nothing in this record tends to discredit it. 
Therefore, under the law applicable to interested witnesses, their testimony conclusively
established that the claim was one within the coverage of the policy. See Anchor Casualty Co.
v. Bowers, 393 S.W.2d 168, 169 (Tex. 1965); see also Great Am. Reserve Ins. Co. v. San
Antonio Plumbing Supply Co., 391 S.W.2d 41, 47-48 (Tex. 1965).

 St. Paul argues that there is inconclusive evidence in this record to support the
proposition that the cotton crop was ever damaged by Circle "C"'s aerial spraying operation. St.
Paul contends that the only testimony regarding underlying damage came from Eugene
Schwertner, a Circle "C" partner who testified, "I don't think the damage ever occurred;" and "I
don't think we ever damaged any cotton over there because they made a better crop that year than
any other year, according to their records." Thus, St. Paul argues that the trial court correctly
granted a judgment NOV because this record is devoid of any testimony that even invokes the
basic coverage provisions of the insurance policy. We disagree.

 St. Paul issued an indemnity policy of insurance to Circle "C" promising to
"indemnify the insured for all sums which the insured shall become legally obligated to pay." As
a direct result of the refusal of St. Paul and Safeco to extend insurance coverage, Circle "C"
entered into a compromise settlement agreement with the cotton farmers. Despite this settlement,
Circle "C" continued to deny liability for the underlying crop damage, a position which it shared
with its non-covering insurance carriers. Testimony and documentary evidence was adduced at
trial establishing the allegations made by the cotton farmers for damages to their cotton crops
caused by herbicide drift from the ranch's aerial spraying operation. St. Paul would require that
Circle "C" be forced to abandon its denial of these allegations and even be required to offer proof
to establish the truthfulness of the allegations in order to invoke coverage. We believe that by
refusing to extend coverage to Circle "C" and participate in any way in the defense of the
underlying lawsuit, St. Paul cannot demand such proof. See Heyden Newport Chem. Corp. v.
Southern Gen. Ins. Co., 387 S.W.2d 22, 24 (Tex. 1965); see also Gulf Ins. Co. v. Parker
Prods., Inc., 498 S.W.2d 676, 679 (Tex. 1973). In any event, we conclude that within the
procedural framework of this case, the settlement is the triggering indemnity event under the
policy, and proof of the underlying claim allegations is all that is required to invoke basic
coverage.

 St. Paul relies heavily on the case of Travelers Indemnity Co. v. McKillip, 469
S.W.2d 160 (Tex. 1971). We regard McKillip as distinguishable. In McKillip, the insured's
turkey barn was hit first by a windstorm and then, six days later, by a snowstorm. Although no
actual inspection was made, the insured himself testified that the turkey barn did not appear
damaged after the windstorm. However, after the snowstorm, the structure collapsed. The turkey
farmer's insurance policy covered losses resulting from windstorms but specifically excluded
losses caused by snowstorms. Confronted with this factual scenario, the Supreme Court of Texas
held that, in order to recover, the plaintiff insured had to secure jury findings that the damage was
caused "solely by the . . . insured peril" (i.e., the windstorm), thus segregating the windstorm
damages from the snowstorm damages. Id. at 162. Since there was a fact question about the
occurrence on which the turkey farmer's claim was based, the court ruled that he would have to
bear the burden of proving whether the damages were from the windstorm or the snowstorm. Id.

 By contrast, there is no windstorm/snowstorm type of dispute in this case. A single
event--a compromise settlement for the claimed drift of herbicide--gave rise to Circle "C"'s claim
for coverage. Thus, there is no controversy about the actual facts of the settlement and underlying
event, and instead, the question here revolves around how this particular factual scenario fits
within the terms of the policy. The crux of this appeal concerns the interpretation of the pollution
exclusion clause and the undisputed facts within the record.

 Thus, we conclude that the undisputed facts establish that Circle "C" settled an
underlying lawsuit which resulted from an accidental and unintended aerial spraying operation.
The trial court erred in granting St. Paul's motion for judgment NOV since there was no factual
liability issue which needed to be submitted to the jury. We sustain Circle "C"'s first and second
points of error. 

Cross-Point on Bill of Review

 Because we held that Circle "C"'s breach of contract claim related back to earlier
pleadings in Cause No. 272,145 that tolled the statute of limitations, we must address St. Paul's
cross-point of error that the trial court improperly granted the bill of review reviving that cause. 
St. Paul contends that since the trial court improperly granted the bill of review, we must apply
the statute of limitations from the filing of Cause No. 400,098 in 1986, which is after the four-year limitation period had run. If St. Paul were correct, the breach of contract claim in Cause No.
400,098 would be barred by limitations, and the trial court would have lacked jurisdiction to issue
a judgment on the merits. However, we hold the trial court properly granted the bill of review.

 In order to qualify for a bill of review, the complainant must prove that (1) there
is a meritorious defense to the cause alleged to support the judgment; (2) the party was prevented
from asserting that defense by fraud, accident, or wrongful act of the opposing party, or official
mistake; and (3) the complainant's own negligence was not a factor. Baker v. Goldsmith, 582
S.W.2d 404, 406-07 (Tex. 1979). St. Paul argues that Circle "C" had a duty to call the clerk or
court administrator and inquire as to the date of setting of Cause No. 272,145 for trial. St. Paul
further argues that by calling, Circle "C" would have determined both that the cause had been
reset on the dismissal docket and that the court had the wrong address. St. Paul contends that the
trial court erred in granting the bill of review because Circle "C" was not sufficiently diligent in
inquiring as to the setting of Cause No. 272,145 for trial and, therefore, cannot show the lack of
negligence required for a bill of review.

 The record shows that Circle "C" thought its motion to retain Cause No. 272,145
on the docket also designated that the cause be transferred to the regular trial docket, not the
dismissal docket. If the case had been set on the regular trial docket, Circle "C" would have been
notified that it had failed to appear at a setting before the case would have been dismissed. 
Further, Circle "C" thought that the court had its counsel's current address which was set forth
in the motion to retain.

 The bill of review was tried to the court; no findings of fact or conclusions of law
were requested or filed. Absent findings of fact and conclusions of law, we consider only the
evidence favorable to the judgment and imply that the trial court made all the necessary findings
to support its judgment. See Lemons v. EMW Mfg. Co., 747 S.W.2d 372, 373 (Tex. 1988);
Franklin v. Donoho, 774 S.W.2d 308, 311 (Tex. App.--Austin 1989, no writ). There is evidence
in the record that Circle "C" was not negligent and reasonably believed that the lawsuit would not
be dismissed without further notice to the proper address. By granting the bill of review, the trial
court impliedly found no negligence on the part of Circle "C". Based on this record, there is
some evidence to support that implied finding, and we will not disturb the trial court's ruling in
this regard. We hold that the bill of review was properly granted and overrule St. Paul's cross-point.



CONCLUSION


 We hold that the statute of limitations did not bar Circle "C"'s cause of action for
breach of contract in Cause No. 272,145. We also hold that the trial court properly granted the
bill of review requested by Circle "C". Further, we hold that under a proper construction of the
pollution exclusion clause in St. Paul's insuring contract, Circle "C" conclusively established its
right to recover. Therefore, we reverse this cause and remand it to the trial court for rendition
of judgment upon the jury verdict.



 Mack Kidd, Justice

[Before Justices Powers, Jones and Kidd]

Reversed and Remanded

Filed: May 5, 1993

[Publish]
1.   The farmers also sued the aerial spraying company and the manufacturer of the
herbicide, both of whom participated in the settlement.
2.   The policy exclusion under which Safeco denied coverage was different from that in
the St. Paul policy. The Safeco policy excluded coverage for any property damage
resulting from any substance released or discharged from any aircraft. Circle "C" asserts
that this exclusion precludes coverage of damages from aerial herbicide spraying. 
Therefore, Circle "C" asserts that the excess policy carrier must pay all claims not
covered by the primary policy in an amount above a $10,000 deductible, and not merely
the excess above the primary policy limits. 
3.   The record shows that notice of the setting was sent to Circle "C"'s attorney at the
wrong address. The notice was returned to the clerk with a notation of the correct
address, but the clerk did not forward the notice. 
4.   Ex Parte Goad interprets Act of May 13, 1931, 42d Leg., R.S., Ch. 115, § 1, 1931
Tex. Gen. Laws 194, 194 (Tex. Rev. Civ. Stat. Ann. art. 5539b, since repealed and codified
at Tex. Civ. Prac. & Rem. Code Ann. § 16.068 (West 1986) (without substantive change)).
5.   There are over seventy reported cases from other jurisdictions construing the
pollution exclusion clause which is the focal point of this appeal. See New Castle County v.
Hartford Accident & Indem. Co., 933 F.2d 1162 (3rd Cir. 1991) and cases collected therein.
6.   Circle "C" submitted only four special issues, all of which dealt with the amount of
damages. There was a fifth issue sent to the jury concerning a defense related to Safeco's
coverage of this claim.