**FIRE INSURANCE EXCHANGE,**
Appellant,

v.

**Clarence PAULSON et ux., Appellees.**

**No. 14261.**

Court of Civil Appeals of Texas.

San Antonio.

June 24, 1964.

Rehearings Denied July 22, 1964.

I. Insurance ☜423(2), 429.1(1)

Baker, Botts, Shepherd & Coates, B. D. McKinney, Houston, for appellant.

Austin Y. Bryan, Jr., Houston, for appellee.

MURRAY, Chief Justice.

This is a suit allegedly based on damages caused by Hurricane Carla. It was instituted by Clarence Paulson and wife, Julia Paulson, against Fire Insurance Exchange, Los Angeles, California, seeking to recover, on a policy of hurricane insurance, for damages done by Hurricane Carla to their home in Palacios, Matagorda County, Texas. This hurricane occurred between the dates of September 9 and 13, 1961.

The jury found, among other things, "that plaintiffs' residence house on Lot 5, Block 97, Palacios, Matagorda County, Texas, was damaged on or about September 10 and 11, 1961, as a direct result of Hurricane Carla"; that the damage was not a direct result of tornado winds passing in the area of plaintiffs' property; that plaintiffs' property did not sustain loss which was directly caused by high water, whether driven by wind or not, and based upon these findings the trial court entered judgment in favor of plaintiffs in the amounts found by the jury, from which judgment the defendant Insurance Company has prosecuted this appeal.

Admittedly, the house was damaged at some time during the passage of Hurricane Carla through Palacios in September, 1961. It was one of the most destructive storms that has visited the Texas Coast, so far as property loss is concerned. Appellees left their home on Saturday, September 9, and when they returned on Wednesday, the

13th, the house was greatly damaged, especially the downstairs portion thereof. The house was left standing; there was very little damage done to the upstairs, and the shingles had not been blown off the roof. There was evidence that the flood waters had gotten up to some four and one-half feet deep in the house, not counting the waves which were very much higher. There are numerous pictures in the record showing the house after the storm had subsided, and from all these pictures it appears that most of the damage was caused by high water rather than wind. Appellees left their home and, of course, do not know of their knowledge just how the damage occurred. There were three witnesses who stayed in Palacios and rode the storm out, but they gave no direct evidence as to whether wind or water or both caused the damage to appellees' house. The evidence shows that at all times before the eye, or center, of the storm reached Palacios the wind was blowing from a northeasterly direction. After the eye passed inland, due to the counter-clockwise motion of these hurricanes, the wind was reversed and in Palacios it blew in the opposite direction. The eye reached Palacios between 3 and 4 p. m. Monday, September 11. In advance of the eye there were reports of the wind velocity reaching peak gusts of 150 miles per hour and sustained winds up to 100 miles per hour. The town of Palacios was not flooded prior to the time the eye had passed inland, but after the eye passed and the wind began to blow from the southwest the water began to rise and the flood waters came into the town to the depth heretofore stated.

The insurance policy here involved contained the provision that appellant would not be liable for loss caused by "snowstorm, tidal wave, high water, or overflow, whether driven by wind or not; nor for any loss caused by rain, whether driven by wind or not, unless the wind or hail shall first make an opening in the walls or roof of the described building, and shall then be liable only for loss to the interior of the building or the insured property therein caused immediately by rain entering the building through such openings."

It is settled law of this State that the policy provision set out above is valid and that the burden of proving that the damage was caused by wind is on appellees, and to further show that the damage was not caused by a combination of wind and water. Coyle v. Palatine Ins. Co., Tex.Com. App., 222 S.W. 973; Cox v. Queen Ins. Co., Tex.Civ.App., 370 S.W.2d 206; Palatine Ins. Co. v. Petrovich, Tex.Civ.App., 235 S.W. 929; Niagara Fire Ins. Co. v. Muhle, 8 Cir., 208 F.2d 191.

There is of course some evidence that the damage was caused by Hurricane Carla because it occurred during the time that Carla was passing through Palacios, but it is insufficient to show that such damage was not caused by the combination of wind and water.

There is evidence that breaking waves in the area of appellees' house could have been expected to exert a force of approximately 400 pounds per square foot, while a sustained wind of 100 miles per hour would produce a pressure of 30 pounds per square foot and 125 miles per hour a pressure of 46 to 47 pounds per square foot. This would indicate that the damage was much more likely to have been caused by the water rather than the wind. The fact that the house was not blown down, that very little damage was done to the upstairs, that shingles were not even blown off the roof, and that severe damage was done to the downstairs where the water was, all indicate water damage rather than wind damage. Further, the conditions after the storm was over indicated water damage rather than wind damage.

The jury's answer to Special Issue No. 10, to the effect that appellees' house did not sustain loss caused by high water is so against the great weight and preponderance of the evidence as to be clearly wrong, and therefore must be set aside.

The Supreme Court on June 10, 1964, rendered a decision in McDonald v. New York Central Mutual Fire Ins. Co., Tex., 380 S.W.2d 545, in which damages were allowed for the destruction of a house in the Palacios area by Hurricane Carla, but in that case there was testimony of eye witnesses that the house had been blown away before the high water came inland. There the house was completely destroyed before the water came, while here the house was left standing and the principal damage was done to the lower story, where the water was from four to five feet deep, to say nothing of high waves.

The judgment of the trial court is reversed and the cause remanded for a new trial.