Opinion issued January 19, 2006












In The
Court of Appeals
For The
First District of Texas




NO. 01-05-00093-CV




TRAVELERS PERSONAL SECURITY INSURANCE COMPANY,
Appellant

V.

 DOUGLAS AND ROSALIND MCCLELLAND, Appellees

* * *

DOUGLAS AND ROSALIND MCCLELLAND, Appellants

V.

TRAVELERS PERSONAL SECURITY INSURANCE COMPANY, Appellee




On Appeal from the 113th District Court
Harris County, Texas
Trial Court Cause No. 2001-20430




O P I N I O N 
          After Travelers Personal Security Insurance Company (“Travelers”) denied
Douglas and Rosalind McClelland’s (“the McClellands”) claim, the McClellands
filed suit alleging violations of the Texas Insurance Code, the Deceptive Trade
Practices Act, and common law breach of contract. The jury returned a verdict,
finding that plumbing leaks, which were covered under the McClellands’ insurance
policy, had caused eighty percent of the damage to the McClellands’ home. The trial
court entered judgment for damages from the breach-of-contract violation, but 
granted Travelers’ Motion for Judgment Notwithstanding the Verdict in part, entering
judgment disregarding the jury’s verdict awarding additional damages to the
McClellands based on the jury’s finding that Travelers had violated the Insurance
Code by knowingly engaging in unfair or deceptive conduct. Travelers appeals from
the breach-of-contract damage award, and the McClellands appeal the trial court’s
partial granting of the Motion for Judgment Notwithstanding the Verdict. We affirm
the judgment of the trial court. 
BACKGROUND
          In the summer of 2000, the McClellands began to notice structural problems
with their house due to movement of the foundation and thereafter submitted an
insurance claim with Travelers. The insurance policy the McClellands owned
excluded coverage for foundation damage due to “natural causes”; however, an
exception to this exclusion covered the resulting damage from foundation movement
due to plumbing leaks.
          A leak detection test was performed and revealed plumbing leaks under the
foundation. Travelers then hired Jerry Jackson, a structural engineer, to ascertain
whether these leaks were the cause of the foundation damage to the McClellands’
home. Jackson concluded that the damage to the house was not due to the plumbing
leaks, and, based on this report, Travelers denied the McClellands’ claim.


 Peter de
la Mora, the McClellands’ expert, found that the plumbing leaks were the cause of the
foundation movement and the resulting damage. While conceding that natural causes
were part of the problem, de la Mora testified that the plumbing leak triggered the
movement causing the damage to the house. 
LEGAL SUFFICIENCY OF THE EVIDENCE
          Travelers’ sole issue is that the evidence is legally insufficient to support the
jury’s verdict that eighty percent of appellees’ damages was attributable to the
plumbing leaks.
 
STANDARD OF REVIEW
          In City of Keller v. Wilson,168 S.W.3d 802, 827 (Tex. 2005), the supreme court
concluded, “the final test for legal sufficiency must always be whether the evidence
at trial would enable reasonable and fair-minded people to reach the verdict under
review. . . [L]egal-sufficiency review in the proper light must credit favorable
evidence if reasonable jurors could, and disregard contrary evidence unless
reasonable jurors could not.” Id.
          When reviewing a no-evidence point of error,“all the record evidence must be
considered in the light most favorable to the party in whose favor the verdict has been
rendered, and every reasonable inference deducible from the evidence is to be
indulged in that party’s favor.” Merrell Dow Pharm., Inc. v. Havner, 953 S.W.2d
706, 711 (Tex. 1997). “Anything more than a scintilla of evidence is legally
sufficient to support the finding.” Formosa Plastics Corp., v. Presidio Eng’rs &
Contractors, Inc., 960 S.W.2d 41, 48 (Tex. 1998).

DISCUSSION
 Travelers’ argument, and the resolution of its appeal, rests on its construction,
in the context of insurance coverage, of the concurrent causation doctrine. The Texas
Supreme Court has said that it is “well-settled in Texas” that if an insurer pleads an
“exclusion under the policy” the “insureds [are] obligated to introduce evidence to
prove and secure jury findings that damage was caused solely by the [covered risk];
or segre[gate] the damage caused by the insured peril from that caused by . . . an
excluded peril.” Travelers Indem. Co. v. McKillip, 469 S.W.2d 160, 162 (Tex. 1971)
(emphasis added). The McKillip Court stated, “It is essential that the insured produce
evidence which will afford a reasonable basis for estimating the amount of damage
or the proportionate part of damage caused by a risk covered by the insurance policy.” 
Id. at 163 (citing Paulson v. Fire Ins. Exch., 393 S.W.2d 316 (Tex. 1965)). In 1997,
the court reiterated its commitment to the principles espoused in these cases in
Texarkana Memorial Hospital, Inc. v. Murdock, 946 S.W.2d 836, 840 (Tex. 1997)
(reaffirming the holdings in McKillip and Paulson). Given this, the specific issue for
us to resolve here is whether the McClellands placed before the jury more than a
scintilla of evidence segregating the damage caused by plumbing leaks versus the
damage incurred by natural causes such that the evidence was legally sufficient to
support the jury’s finding that eighty percent of the damages was attributable to the
plumbing leaks. 
          At trial, de la Mora, testified as follows:
Q: In 1995, when [The McClellands] purchased this home, can you tell
me what this engineer found as far as whether the foundation was
performing as it should perform?
 
A: I believe that he found that the foundation was performing as it
should perform.
 
Q: Did he find the house to be relatively level?
 
A: I would say so. He didn’t find much evidence of movement in the
way of cracks. I believe that he said there were some cracks in the left
or right-hand side—I don’t remember exactly right now—along the rear.
 
Q: Okay. In fact, the only thing he found were a couple of hairline
cracks in the exterior brick veneer. Do you recall that?
 
A: I think so. That’s right.

          ***
 
Q: What’s the significance of having a 30-year-old home—that we know
at least in 1995 was relatively flat, the foundation’s performing—why
is that significant to you in doing a forensic evaluation of this case?
 
A: Well, when houses get older and as foundations get older, they stop
moving. They don’t move as much as when they’re newer. Most of the
movement of a foundation occurs—and I’m talking from natural
causes—in the first 15 years or so. After that it kind of sets. And unless
something happens out of the ordinary, that foundation is just going to
stay there. 

          ***
 
Q: . . . What does that ‘95 report tell you about the ability of this home
to withstand the influence of drought and trees and things of that nature?
 
A: It tells me that it’s performing okay, that it has withstood the effects
of the trees and vegetation and drainage and all those naturally occurring
movements. 

          ***
 
          Q: And was this [plumbing] leak identified by Church [Services] near
a [pipe] fitting of some sort?
 
A: Yes, it was.

          ***
 
Q: . . . Or what’s your opinion, I guess, as it relates to the plumbing
leaks versus you talked about drainage, you talked about just the normal
settlement that occurs in an old home?
 
A: Right. Well, the home needs to be repaired because it has moved too
much. And that movement has been partly caused by the plumbing leak,
partly by other natural conditions that affect it.
 
Q: Okay. Do you know anything about, since this home in ‘95 was
described as being relatively flat by an engineer, tell me how it is that
these natural causes, why they would only manifest themselves in 2000?
Or maybe they didn’t. I don’t know.
 
A: No. These natural causes have been affecting this house since the
day it was built.
 
Q: But why weren’t they seeing cracks all over the place?
 
A: Well, because the—there has to be other effect that triggers the
movement. Again, the house has been sitting around for 25, 30 years. 
It’s not just all of a sudden going to start moving unless something is
introduced that causes a change in the way the foundation is supported. 
 
Q: Well, is there anything other than plumbing leaks that’s new in the
equation over the lifetime, the 35 years of this home?
 
A: No, not that I’m aware of. Because over the lifetime this house has
seen already droughts before this period, and a lot of changes in climate
from wet to dry. So—
 
Q: All right. 

          Finally, the McClellands introduced into evidence a diagram prepared by de
la Mora showing the house and the portion of it he believed to be directly affected by
the plumbing leaks. De la Mora testified that “the red hashed part that’s in that
diagram is the area we believe the plumbing leaks have affected the house.”
          De la Mora’s testimony showed that the engineer who initially inspected the
home when the McClellands first purchased it found that the foundation was
“performing as it should.” It further showed that, while natural causes, such as
drainage and vegetation influenced the movement of the foundation, such causes
would only substantially affect foundation movement for the first fifteen years of its
life unless an additional factor is added to the equation. De la Mora’s opinion—and
both parties agreed that there were plumbing leaks, and that those leaks had been
discovered in 2000—was that the plumbing leaks were the trigger in causing the
foundation’s recent dramatic movement. Lastly, de la Mora’s diagram specifically
showed the area of the house he believed to be affected by plumbing leaks.
          Using the requisite paradigm from McKillip—whether the insured segregated
damages to sufficiently separate the insured peril from that caused by an excluded
peril—the jury was entitled to infer that the damages to the McClellands’ home were
due, at least in large part, to the introduction of the covered risk, namely, the
plumbing leak. See McKillip, 469 S.W.2d at 162. That is, the jury could have found
that the insured peril was sufficiently segregated from the excluded peril based on de
la Mora’s testimony that the McClellands’s foundation only began to move (to the
extent that it caused damage to the house) once the plumbing leaks began, and his
diagram showing where “the plumbing leaks have affected in the house.” 
          Travelers central argument relies heavily on its interpretation of State Farm v.
Rodriguez. 88 S.W.3d 313, 321 (Tex. App.—San Antonio 1999, pet. den’d). In that
case, the San Antonio Court of Appeals interpreted the doctrine of concurrent
causation to limit an insured’s recovery to the amount of damage caused solely by the
covered peril. Id. (citing Wallis v. United Servs. Auto. Ass’n, 2 S.W3d 300, 302–03
(Tex. App.—San Antonio, 2002 pet. denied). The court went on to say that, because
an insured can recover only for covered events, the onus of segregating the damage
attributable solely to the covered event is a coverage issue for which the insured
carries the burden of proof. Id. “To this end,” the court continued, “the insured must
present some evidence upon which the jury can allocate the damage attributable to
the covered peril.” Id. (emphasis added). “Although a plaintiff is not required to
establish the amount of his damages with mathematical precision, there must be some
reasonable basis upon which the jury’s finding rests.” Id.
          Travelers would have this court hold that Rodriguez requires plaintiffs in an
insurance case to explicitly state what damage is “solely attributable” to the covered
cause. This is not what Rodriguez says; it only requires that there is some evidence
that provides a reasonable basis for the jury’s findings. Id. at 321. In addition, the
supreme court, in McKillip, explicitly stated that it is “essential that the insured
produce evidence which will afford a reasonable basis for estimating the amount of
damage or the proportionate part of damage caused by a risk covered by the insurance
policy.” McKillip, 469 S.W.2d at 163. While it is true that de la Mora appeared to
backtrack on cross-examination, it is the province of the jury to “believe all or any
part of the testimony of any witness and disregard all or any part of the testimony of
any witness.” Golden Eagle Archery, Inc. v. Jackson, 116 S.W.3d 757, 774–75 (Tex.
2003). Given this, looking at all the evidence, as we must, in the light most favorable
to the verdict, we hold that de la Mora’s testimony and diagram amount to more than
a scintilla of evidence providing a reasonable basis upon which the jury could have
found that eighty percent of the damage to the house was due to plumbing leaks.



Accordingly, we overrule Travelers’ sole point of error.
                     JUDGMENT NOTWITHSTANDING THE VERDICT
          The McClellands appeal the trial court’s partial grant of Travelers’ motion for
judgment notwithstanding the verdict, overturning the jury’s finding that Travelers
had violated the Insurance Code by knowingly engaging in unfair or deceptive
conduct, giving rise to additional damages.
STANDARD OF REVIEW 
          The standard of review for a judgment notwithstanding the verdict is the same
as a directed verdict. Rush v. Barrios, 56 S.W.3d 88, 94 (Tex. App.—Houston [14th
Dist.] 2001, pet. denied) (citing Best v. Ryan Auto Group, Inc., 786 S.W.2d 670, 671
(Tex. 1990)). We will affirm a judgment notwithstanding the verdict only if there is
no evidence to support an issue, or conversely, if the evidence establishes an issue as
a matter of law. Id. (citation omitted).           
          The evidence is legally sufficient if it would enable reasonable and fair-minded
people to reach the verdict under review. City of Keller v. Wilson, 168 S.W.3d 802,
827 (Tex. 2005). We review the evidence in the light most favorable to the verdict
to determine whether there is more than a scintilla of evidence to support the jury’s
finding. Merrell Dow Pharm., Inc., 953 S.W.2d at 711; Formosa Plastics Corp., 960
S.W.2d at 48. 
 
DISCUSSION
          Under article 21.21 of the Insurance Code, an insurer violates its duty of good
faith and fair dealing by denying or delaying payment of a claim when the insurer
knew or should have known that it was reasonably clear that the claim was covered. 
Tex. Ins. Code Ann. art. 21.21 (Vernon 2005); Universe Life Ins. Co. v. Giles, 950
S.W.2d 48, 55–56 (Tex. 1997). Evidence showing only a bona fide coverage dispute
does not, standing alone, demonstrate bad faith. State Farm Lloyds v. Nicolau, 951
S.W.2d 444, 448 (Tex. 1997). However, an insurer cannot shield itself from bad-faith
liability by investigating a claim in a manner calculated to construct a pretextual basis
for denying a claim. See id.(insurer’s reliance on biased engineer’s report was pretext
for denying claim).
          Therefore, the specific issue for us to consider on appeal is whether, in
reviewing all the evidence in the light most favorable to the McClellands, there is
more than a scintilla of evidence to support the jury’s finding that Travelers violated
article 21.21 of the Insurance Code by knowingly engaging in unfair or deceptive
conduct in denying the McClellands’ claim.
          The touchstone case for bad-faith insurance claims is State Farm v. Nicolau,
and it therefore warrants a detailed discussion. In that case, the Nicolaus’ house had
sustained significant damage, and they hired an engineer to investigate the cause.
After he determined that “there was a significant leak in the plumbing system,” the
Nicolaus filed a claim with State Farm. Id. at 447. The insurance company
commissioned two reports by its own hired adjusters, both of which “expressed
doubt[] that the leak was responsible for the foundation damages.” Id. In response,
the Nicolaus gave State Farm the report from their engineer that plumbing leaks were
the culprit for the damage to the house. 
           Thereafter, State Farm hired, via an insurance adjuster, Haag Engineering to
examine the Nicolaus’ home. After receiving Haag Engineering’s report finding no
connection between the plumbing leaks and the damage to the house, State Farm
denied most of the coverage sought. The Nicolaus then hired another firm with a
background in geotechnical engineering, which also found that plumbing leaks were
the source of the problem. Upon receipt of this second report, they forwarded it to
State Farm, who again denied their claim. The Nicolaus then filed suit against State
Farm. 
          The supreme court, in considering a no-evidence issue, determined that the
Nicolaus had put forth some evidence “that State Farm denied the claim without . . .
attempting to objectively determine whether its liability had become reasonably
clear.” Id. at 448. That evidence was that the Haag engineer (1) worked almost
exclusively for insurance companies; (2) was aware that plumbing leaks would cause
the insurer to incur liability; and (3) nearly exclusively found no liability for the
insurer. In addition, the evidence supported a “logical inference that State Farm
obtained the reports from Haag Engineering because of Haag’s general view that
plumbing leaks are unlikely to cause foundation damage.” See id. (quoting testimony
from State Farm’s claim superintendent that he knew before he hired Haag that
Haag’s general opinion was that localized leaks underneath a house would not cause
foundation damage).. 
          There was also evidence that State Farm, and the engineers on which it relied,
did not conduct an adequate investigation. Id. at 449. A licensed insurance adjustor
testified that State Farm’s failure to examine the leaking pipe, take core samples, and
perform other tests amounted to an unreasonable investigation. Id. Finally, the
Nicolaus’ repair contractor, who had reviewed nearly a hundred Haag reports, knew
of only two instances in which it had found plumbing leaks to have been the cause
of foundation damage to a home, and “even State Farm’s own expert . . . testified that
he disagreed with [some of Haag’s conclusions].” Id. at 450. 
          To be sure, the instant case presents us with a close call. The McClellands’
evidence adduced at trial, like that found in Nicolau, established that Travelers’
engineer Jackson worked almost exclusively for insurance companies, knew that
plumbing leaks were covered under the insurance policy, and found no connection
between plumbing leaks and foundation problems eighty-five to ninety percent of the
time. Their evidence also allowed for the logical inference that Travelers hired
Phoenix Engineering, the firm that Jackson worked for, because Phoenix consistently
found no connection between plumbing leaks and foundation damage.



          However, as the supreme court in Nicolau stated, “[s]tanding alone, this [type
of] evidence would not always be evidence of bad faith. All experts presumably have
certain general views and expertise, and an insurer’s mere awareness of such views
is not necessarily an indication of bad faith.” Id. at 449. That is, the supreme court
seems to require that, in order to show bad faith, the evidence must show behavior
more egregious than merely hiring a firm whose reports generally feature an outcome
favored by its recipient. Id.
          We cannot say that the evidence shows bad faith. While the depth of the
investigation into the plumbing leaks was an issue in Nicolau, and the McClellands
attempt to make it such here, the testimony of each expert as to the extent of his
investigation was essentially the same: both experts’ investigations consisted in large
part of documenting the damage to the house and measuring the elevations in various
parts of the house. In addition, both Douglas and Rosalind McClelland testified that
they believed that Travelers had not set out to deny their claim, and that the dispute
was based on “an honest dispute between two engineers.” And this is the key fact:
while both sides hired experts who came to differing conclusions as to the cause of
the foundation damage, the McClellands’ expert himself repeatedly testified that
natural causes had combined with the plumbing leaks to cause the damage to the
house. 
          Evidence that merely shows a bona fide dispute about the insurer’s liability on
the contract does not rise to the level of bad faith. Transp. Ins. Co. v. Moriel, 879
S.W.2d 10, 17 (Tex. 1994). Nor is bad faith established if the evidence shows the
insurer was merely incorrect about the factual basis for its denial of the claim, or
about the proper construction of the policy. Lyons v. Millers Cas. Ins. Co., 866
S.W.2d 597, 601 (Tex. 1993) (“[T]he issue of bad faith focuses not on whether the
claim was valid, but on the reasonableness of the insurer’s conduct in rejecting the
claim.”). A simple disagreement among experts about whether the cause of the loss
is one covered by the policy will not support a judgment for bad faith. Id. To the
contrary, an insured claiming bad faith must prove that the insurer had no reasonable
basis for denying or delaying payment of the claim, and that the insured knew or
should have known that fact. See Moriel, 879 S.W.2d at 18. 
          Looking at “all the evidence in the light most favorable to the verdict,” given
that the McClellands’ own expert could not unequivocally state that it was plumbing
leaks, and plumbing leaks alone, that were the cause of the foundation damage
(thereby leaving the inference that the cause of the damage was not immediately
reasonably clear), and that the McClellands can marshal no more evidence than
Travelers’ proclivity to hire an expert of its own preference, the evidence will only
bear the conclusion that this was a “simple disagreement among experts about
whether the cause of the loss is one covered by the policy, [and] will not support a
judgment for bad faith.” Id. at 18. 
          We hold that, in looking at all the evidence in the light most favorable to the
verdict, the evidence is legally insufficient to support the jury’s finding of additional
damages. Accordingly, we overrule the McClellands’ sole point of error.
CONCLUSION
 
          We affirm the judgment of the trial court in all respects.
                     
           
 

                                                                        Sam Nuchia
                                                                        Justice

Panel consists of Justices Nuchia, Jennings, and Higley.