

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-23-00116-CV

———————————————

LANDMARK PARTNERS, INC., Appellant

V.

WESTERN WORLD INSURANCE, Appellee

On Appeal from the 67th District Court
Tarrant County, Texas
Trial Court No. 067-324104-21

Before Bassel, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION

Landmark Partners, Inc. (Landmark) sued Western World Insurance (Insurance) after Insurance denied Landmark's claim under an insurance policy. Landmark asserted claims for breach of contract, statutory violations, breach of common-law duties, and attorney's fees and statutory interest. Relying in part on the testimony of Landmark's own expert, Insurance moved for traditional summary judgment on the ground that the concurrent causation doctrine defeated Landmark's contractual claim, which in turn defeated Landmark's other claims. The trial court granted summary judgment for Insurance, and Landmark now appeals. In five overlapping issues, it argues that the concurrent causation doctrine does not bar recovery and that it produced sufficient evidence to defeat summary judgment. We will affirm.

### Background

Landmark's policy with Insurance covered damage to Landmark's commercial property, but only for damage that commenced during the policy period, which began on February 4, 2020. The policy included coverage for hail and wind damage[1] but no coverage for rain damage to the property's interior unless the rain entered the building through damage caused by a covered event. After a storm on May 7, 2020, Landmark

---

[1]The policy did not cover "aesthetic impairment" to roof surfacing from wind or hail.

filed a claim with Insurance, requesting that Insurance provide coverage for damage to Landmark's building, which Landmark alleged had been caused by the storm.

Approximately six weeks after the storm, Insurance sent a contract field adjuster to inspect the property, and that adjuster reported no signs of hail damage on the property's roofing materials. Sonny "Cal" Spoon, a public adjuster with InsuranceBusters.net, which had been hired by Landmark, inspected the property at the same time. Spoon concluded that the property had suffered hail damage, and he estimated the cost of repairs to Landmark's property at $1,300,633.58. Insurance then retained an engineer, Jarrod Burns, who did find some hail damage, particularly to some mechanical units on the roof, but he determined that the damage had been caused before the policy took effect. Insurance denied the claim.

Landmark then sued Insurance for failing to provide coverage. Landmark retained several experts in connection with its suit. One of those experts was Jeffrey Leach, an engineer, who inspected the property on June 5, 2022, and unlike Insurance's engineer, Leach found hail damage on the property's roof. Landmark also retained Gary Johnson, a public adjuster, to opine on Insurance's handling of the claim, and Michael Ogden, a construction expert, to provide an estimate for repairing the property.

Insurance filed a traditional motion for summary judgment based on the concurrent causation doctrine, which applies "when covered and excluded events combine to cause an insured's loss." *Dillon Gage Inc. of Dall. v. Certain Underwriters at*

3

*Lloyds Subscribing to Policy No. EE1701590*, 636 S.W.3d 640, 645 (Tex. 2021). "[W]hen a covered event and an excluded event 'each independently cause' the loss, 'separate and independent causation' exists, 'and the insurer must provide coverage.'" *Id.* (quoting *JAW The Pointe v. Lexington Ins.*, 460 S.W.3d 597, 608 (Tex. 2019)). But if both covered and uncovered events combine to cause a loss, and "[the] covered and uncovered events are inseparable, then causation is concurrent, the insurance policy's exclusion applies, and the insurer owes no coverage for the loss." *Id.*

Insurance's summary judgment motion observed that for Landmark to prove its contract claim at trial, it would have to prove that Insurance had failed to provide coverage that the policy obligated Insurance to provide. Insurance's motion addressed this part of Landmark's contract claim. Specifically, Insurance argued that its evidence showed that the May 2020 storm was not the sole cause of property damage and that there was no way to show what part of the damage had been caused by that storm or other covered events. It contended that because the evidence showed that the property damage had multiple, inseparable causes, some of which were not covered by the policy—and thus the evidence showed that the policy did not require Insurance to provide coverage—the evidence demonstrated as a matter of law that Insurance had not breached the contract by failing to provide coverage. *See id.* Insurance further argued that because Landmark's contract claim failed, its extracontractual claims also failed.

To support its motion, Insurance attached Burns's report concluding that hail damage at the property had been caused before the policy became effective. It also attached evidence from Landmark's experts, discussed in more detail below, that supported Insurance's argument that covered damage to the property could not be segregated from non-covered damage. Landmark filed a response attaching the expert reports of Leach, Ogden, and Johnson, as well as excerpts from Leach's, Ogden's, and Johnson's depositions. However, as we explain below, none of Landmark's evidence was sufficient to raise a fact issue on causation or Insurance's obligation to provide coverage.

The trial court signed a final judgment granting summary judgment for Insurance. Landmark now appeals.

**Standard of Review**

We review a summary judgment de novo. *Travelers Ins. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

## Discussion

## I. Breach of Contract

In Landmark's first issue, it asserts that it proffered sufficient summary judgment evidence to support a prima facie breach-of-contract claim, and thus the trial court erred by granting summary judgment. In its second issue, it argues that its breach of contract claim "was not vitiated by the doctrine of concurrent causes." Because these issues are interrelated, we consider them together.

Like other contracts, an insurance policy "establishes the respective rights and obligations" to which the parties have agreed. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 488 (Tex. 2018) (quoting *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015)). As noted by Insurance in its summary judgment motion, for Landmark to prove its contract claim at trial, it would have to show that the policy obligated Insurance to pay for the damage to Landmark's property. *See Esty v. Beal Bank S.S.B.*, 298 S.W.3d 280, 299 (Tex. App.—Dallas 2009, no pet.) (noting that "[a] breach of contract occurs when a party fails to perform an act that it has expressly or impliedly promised to perform"); *see also Prime Time Fam. Entm't Ctr., Inc. v. AXIS Ins. Co.*, 630 S.W.3d 226, 230 (Tex. App.—Eastland 2020, no pet.) (noting the "basic principle" that "insureds are not entitled to recover under their insurance policies unless they prove their damage is covered by the policy"). As the Texas Supreme Court has summarized, "no breach can occur unless coverage exists." *Menchaca*, 545 S.W.3d at 494.

The doctrine of concurrent causation relates to this principle. Because an insurer has no obligation to pay for damage caused by an event not covered under the policy, if covered and non-covered events combine to cause the damage, the insured must segregate between the damage attributable to the covered event and the damage attributable to other causes. *Prime Time*, 630 S.W.3d at 230; *Farmers Grp. Ins., Inc. v. Poteet*, 434 S.W.3d 316, 326 (Tex. App.—Fort Worth 2014, pet. denied). When concurrent causation applies, an insured's "[f]ailure to segregate covered and non-covered perils is fatal to recovery." *Tex. Windstorm Ins. Ass'n. v. Dickinson I.S.D.*, 561 S.W.3d 263, 273 (Tex. App.—Houston [14th Dist.] 2018, pets. denied). Thus, Landmark would have to show at trial one of three circumstances: (1) that the damage had only one cause, which was covered by the policy; (2) that the damage had multiple independent causes, one of which was covered; or (3) although covered and non-covered events combined to cause the damage, Landmark had segregated between the covered damage and non-covered damage. *See Farmers Grp.*, 434 S.W.3d at 326; *see also Dillon Gage*, 636 S.W.3d at 645.

The concurrent-causation concept is illustrated by *Travelers Indemnity Co. v. McKillip*, 469 S.W.2d 160 (Tex. 1971). In that case, the insureds' barn collapsed after a snowstorm. *Id.* at 161. However, six days before the snowstorm, a "tremendous wind" had struck the same barn. *Id.* The insurance policy covered wind damage but did not cover snowstorm damage. *Id.* 161–62. The insureds claimed that the barn had been damaged by the wind. *Id.*; *Travelers Indem. Co. v. McKillip*, 458 S.W.2d 532, 533 (Tex.

App.—Eastland 1970), *rev'd*, 469 S.W.2d 160 (Tex. 1971). At trial, however, the insureds produced no evidence "relating to the direct effect of the wind on the damaged building," and no one "attempt[ed] to estimate the damage caused by wind action independent of other causes." *McKillip*, 469 S.W.2d at 163. The insurer had pled that the snowstorm damage was not covered and had requested a special issue in the jury charge "inquiring whether damage to [the insured's] building was caused by a combination of the wind and the weight of the snow, and if so, the percentage or the proportionate part of the damage caused by the snow." *Id.* at 162.

The Texas Supreme Court held that the insureds had failed to meet their burden to "introduce evidence to prove and secure jury findings that the damage was caused solely by the windstorm, an insured peril; or segregating the damage caused by the insured peril from that caused by the snowstorm, an excluded peril." *Id.* Because the insureds had failed to meet their burden to "produce evidence [that] w[ould] afford a reasonable basis for estimating the amount of damage or the proportionate part of damage caused by a risk covered by the insurance policy," the Texas Supreme Court reversed the jury's verdict for the insureds and remanded for a new trial. *Id.* at 163.

In this case, Insurance likewise raised the issue of concurrent causation, and Landmark had the burden to show that the damage for which it sought coverage resulted from the May 2020 storm or another covered event. Accordingly, if Insurance's summary judgment evidence established as a matter of law that

8

segregation was impossible, Insurance was entitled to judgment unless Landmark responded with evidence raising a fact issue. *See id.*; *see also* Tex. R. Civ. P. 166a(b), (c); *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010) (noting that a defendant who conclusively negates at least one essential element of a plaintiff's cause of action is entitled to summary judgment on that claim). Insurance's summary judgment motion attached as evidence the policy; Burns's July 2020 report; Insurance's July 2020 claim determination letter; an October 2020 letter to Insurance from Spoon; Leach's July 2022 expert report; excerpts from Leach's deposition; Ogden's July 2022 report; and excerpts from Ogden's deposition.

The policy stated that, regarding commercial property conditions, Insurance "cover[s] loss or damage commencing [d]uring the policy period." [Numbering omitted.] The coverage period began on February 4, 2020. Thus, to show coverage, Landmark would have to show that the damage to the building commenced after February 4, 2020.

Burns's report discussed the damage that he had seen in his inspection and his conclusion that the damage had occurred before the May 2020 storm:

- Burns stated that he had inspected the property on June 29, 2020 and collected drone images of the property the next day.

9

- The property showed evidence of hail damage, but the only areas specifically identified by Burns as hail damaged were "various rooftop mechanical units."

- Burns saw no damage on one Toshiba rooftop unit, however. An aerial image on Google Earth taken in February 2017 did not show the unit, but the unit was visible in an image taken in November 2018.

- Burns concluded from these images and the lack of damage to the unit that the hail damage seen on the property resulted from a hail event that occurred before November 2018.

- Burns researched past hail events and learned that the area had experienced hail in April 2011, October 2011, March 2016, and April 2016.

- The hail spatter marks that Burns saw "were somewhat faded, indicating exposure to weather following the event," but he did not provide any guidance that would afford a reasonable basis for determining the date of damage based on how faded a mark had become.

- Burns found no hail or wind damage to the property's roofing materials, concluded that "[t]here were no storm-created openings that could have contributed to moisture intrusion [i.e., leaks]," and opined that various other conditions on the property had not been caused by hail or wind.

Insurance's July 2020 claim determination letter stated that based on Burns's conclusions, Insurance was declining coverage for Landmark's claim. The letter stated that Insurance would keep its file open for thirty days in case Landmark wanted to provide "more or different information that may be relevant."

The October 2020 letter to Insurance from Spoon disputed Insurance's claim denial. Spoon had inspected the property at the same time as Insurance's field adjuster, and the letter focused mainly on Insurance's adjusting process.

- The letter pointed out problems with the inspection that had been done by the field adjuster.

- The letter also disputed Burns's conclusion that "[t]here were no storm-created openings that could have contributed to moisture intrusion"; the letter stated that "[o]bviously, there was a bre[a]ch as the interior was not damaged prior to the given date of loss per the Insured."

- The letter also attached estimates for property repairs and demanded that Insurance provide coverage.

The letter is some evidence that the field adjuster may have performed an inadequate inspection, and it indicates that Spoon had been told by someone that the building had not had leaks before the May 2020 storm. However, it provides no evidence that

11

all the damage claimed by Landmark had commenced during the policy period and gives no guidance on how to separate covered damage[2] from non-covered damage.

Ogden's July 2022 report discussed damage to various places on the roof that he had seen in his May 2022 inspection of the property and in the photographs that had been taken during Spoon's inspection.

- Ogden stated that based on his experience, education, training, and background in property loss and construction, "[h]ail [had] caused damages to the property," and Insurance had "failed to account for all damages to the property that were reasonably clear to [Ogden] during [his] inspection of the property."

- Ogden opined that the damages had been caused by the May 2020 storm. However, he did not explain how he determined when the property damage had occurred.

In Ogden's deposition, he was asked about his opinion that damages had been caused by the May 2020 storm, and his answers revealed that he had not determined that the May 2020 storm caused the damage.

---

[2]In this opinion, we use the phrase "covered damage" to refer to property damage that was caused by an event for which the policy provides coverage, regardless of whether the policy at issue requires the insurer to pay for *all* damage caused by the covered event.

12

- Ogden testified that in making the statement in his report that the May 2020 storm was the cause of damage, he had relied on the "the engineer report"—presumably Leach's.

- Ogden asserted that the damage he observed had also been present in the pictures taken by Spoon, so that damage had occurred before Spoon's June 2020 inspection.

- However, he further stated that he had not been retained as a causation expert and would not be testifying at trial regarding his opinion about when the damage occurred. When asked, "[I]f there were a storm that occurred a year before May 2020, would you be able to separate the damage from that storm from the damage that occurred a year later when you're reviewing it in May of 2022," he responded, "No."

In other words, Ogden could determine based on photographs that the property had damage as of June 2020, but he could not offer an opinion on whether it had been caused by the May 2020 storm or if the damage—or at least some of it—had been caused before that.

In Leach's July 2022 report, he stated that his inspection had found hail damage in multiple places on the property's roof system, and he opined that the damage had multiple causes, including the May 2020 storm.

13

- He opined that the damage was a result of hail and high winds associated with the May 2020 storm "in combination with those found to have occurred during previous storms."

- He further stated that the poor rain runoff had caused water to collect over time and deteriorate the roof membrane, making it susceptible to hail damage, which "has allowed water to enter the building."

- He then stated, "It is my opinion that the cumulative effect of [previously-]reported storms in combination with the storm on May 7, 2020, has damaged the roof and allowed water to enter the building."

In other words, Leach's report did not separate out what damage had been caused by the May 2020 storm and what damage had been caused by a previous storm, and the report's reference to cumulative effects suggested that no single event had been an independent cause of damage.

In his deposition, Leach was repeatedly asked about how to separate damage caused by the May 2020 storm from damage that occurred before or after that storm.

- Leach acknowledged that "a good number" of storms had passed through the area after the May 2020 storm.

- Leach was asked how he could separate "whatever happened between May 7, 2020 and June 5, 2022," the date of his inspection, and he responded that "[t]here's no exact science to do that. You can look at

14

the shade of the marks—spatter marks, and try to deduce if it's recent or if it's been there for a significant amount of time. That's about the best you can do."

- He stated that "the same issue" would affect any attempt at separating damage from storms that occurred before May 2020.

- Asked if, in his inspection, he was able to determine whether the roof had any damage that pre-dated the May 2020 storm, he responded, "[W]e deduce based on the appearance, first of all that it's damaged, and then we try it, as best we can to, based on the various aspects of the damage if it's recent or old, that's the best we can do, and based on the time period."

- Asked again if based on what he saw on the roof, he could "separate whatever occurred [before the May 2020 storm] from what occurred on May 7, 2020," he responded, "Not with any guarantee."

- Regarding marks that he had said were consistent with the hail and high winds in the May 2020 storm, he was asked how he knew that the damage did not occur "at another time," and he responded, "You can't rule that out."

- Leach also stated that problems with the original construction and subsequent repairs had rendered the roof more susceptible to hail and wind damage.

- Similarly, regarding damage causing leaks, he could not determine when the damage occurred:

Q. Okay. Then your last sentence there says, "The evidence of hail spattered throughout the roof is a contributing factor in the damaged roof allowing water intrusion," correct?·That's what you say?

A. Yes.

Q. But we can't—or, I shouldn't say we, but **you cannot tell us, based upon your engineering expertise, when that hail spatter occurred, correct**?

A. **Correct**, but I can't rule it out—that it—

Q. I understand that.

A. I can't rule out that this storm had an [e]ffect in all those similar questions.

Q. **Is there any way where you can determine how much of an affect any particular event had on that roof**?

A. **No.**

Q. All right.

. . . .

Do you agree that the problems that you saw, when you did your inspection of the roof, were a combination of weathering, poor design, poor construction, settlement at the edges, ponding, UV rays, and hail and wind?

A. Yes.

Q. Okay. And that you can't, as an engineer, separate all of those factors from each other to determine why you believe there was roof damage out there, correct?

A. Correct.

Q. All right.

A. But I can't rule out that the storm had an effect.

Q. I understand that. And you can't rule out the fact that there could have been other storms also that had an effect?

A. Exactly. [Emphasis added.]

In summary, Leach could not say when the storm damage he saw had occurred. He could not rule out the May 2020 storm as a cause of damage, but he also could not rule out any previous storm or any storm that had occurred in the two years between the May 2020 storm and his inspection in 2022. He provided no guidance that could be used by a factfinder in estimating when the hail or wind damage had occurred. To the contrary, his testimony indicated that there was no way to make that kind of determination.

Because Insurance's summary judgment evidence established that any damage caused by the May 2020 storm could not be segregated from the damage caused by previous storms that were not covered, Insurance demonstrated that it had no obligation to pay under the policy, thereby negating Landmark's breach-of-contract claim. *See Dickinson I.S.D.*, 561 S.W.3d at 273. Accordingly, Insurance was entitled to

17

summary judgment unless Landmark filed a response to Insurance's motion and attached evidence sufficient to raise a fact issue. *See Van v. Peña*, 990 S.W.2d 751, 753 (Tex. 1999) (noting that once the movant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the nonmovant to come forward with competent controverting evidence that raises a fact issue).

Landmark's response argued that the claim had not been properly adjusted, pointing out Insurance's field adjuster's finding that there was no hail damage on the property, despite obvious signs of hail damage. It argued, "[Insurance] has estimated [Landmark]'s storm-caused damage to be *zero*," even though Ogden and Landmark's public adjuster each had found "a substantial valuation of loss," and Landmark asserted that "[t]he jury can sort out which are to be believed and which not." It further contended that the doctrine of concurrent causation did not "vitiate[ ] the vitality" of Landmark's prima facie breach of contract claim because "the only application such doctrine might have is based *solely* upon [Insurance]'s manifestly self-serving, predetermined, incomplete[,] and incompetent investigation." It argued that its property's roof had not leaked before the May 2020 storm and that "[e]xpert allocation of damages between covered and excluded risks is not . . . necessarily required; circumstantial evidence can suffice." To its response, Landmark attached the

18

expert report and deposition of Johnson; Ogden's expert report and deposition excerpts; and Leach's report and deposition excerpts.[3]

Johnson's July 2022 report focused primarily on Insurance's adjusting process:

- The report began by summarizing Insurance's inspection report, quoting Insurance's claim denial letter, and summarizing Leach's report.

- Johnson then stated that in his opinion, Insurance did not properly adjust the claim and had failed to perform a reasonable investigation and had failed to investigate "the actual conflicts within the reports" of its field adjuster and Burns.

- Johnson opined that Insurance should have known at the time of the inspections that Landmark's claim was covered and that Insurance had failed to make a prompt, fair, and equitable settlement of damages.

- However, Johnson did not provide any information that would help a factfinder allocate between damage caused by the hail in the May 2020 storm and damage caused by non-covered events.

In summary, Johnson's report did not provide any information relevant to separating covered and non-covered damage.

---

[3]The response also attached opinions from two federal cases—*Agredano v. State Farm Lloyds*, 975 F.3d 504, 506–07 (5th Cir. 2020), and *Lee v. Liberty Ins. Corp.*, No. 3:19-CV-321-L, 2021 WL 4502323, at *9 (N.D. Tex. Sept. 30, 2021) (mem. op. and order)—which Landmark included to support its arguments regarding the viability of its claim for attorney's fees and statutory interest.

In Johnson's deposition, he discussed his work, the inspections performed by Insurance, and his opinion about Insurance's adjusting of Landmark's claim.

- His opinion about Insurance's adjusting process was based in part on Burns's report that there was no hail damage to the roof from any event, which was contradicted by himself, Leach, and Ogden, as well as photographs in Insurance's own file.

- Toward the end of the deposition excerpt, Johnson was asked if he could determine whether any damage to the property's roof occurred during the May 2020 storm or during a different storm. He responded, "No, there's nothing that I can determine the age. . . . I can't determine the age."

Thus, Johnson's testimony in his deposition did not raise a fact issue on causation.

Landmark's response also attached the same expert report from Ogden, the construction expert, that Insurance had submitted with its motion. Landmark also included Ogden's CV and testimony history. As for the excerpts from Ogden's deposition testimony, Landmark included Ogden's statement that he would not be offering any testimony about when the damage that he observed took place. In the excerpts, Ogden did not provide any information that would help a factfinder allocate between damage caused by the May 2020 storm and damage caused by non-covered events.

20

Landmark further attached to its response the same expert report by Leach, that Insurance had attached to its motion, and Landmark also attached Leach's CV and testimony history. It also included the photographs, Weather Guidance Weather Report, and Hail Strike report attached to Leach's report, which Insurance had not included with its motion. The photographs included images of the roof that had been labeled with locations on the roof on which Leach had found hail damage and pictures of parts of the roof that showed damage. The Weather Guidance report discussed radar and other data about the May 2020 storm, and the Hail Strike report listed historical data for hail activity at the property. The Hail Strike report stated that hail up to 1.5 inches had fallen in the area during the May 2020 storm. It also showed hail in the area during previous storms in January 2020 and in each year from 2011 to 2019.

The excerpts of Leach's deposition relied on by Landmark differed somewhat from the excerpts relied on by Insurance, but they included the same part of the deposition in which Leach replied to a question about whether he could determine if the roof had been damaged before the May 2020 storm. As noted, his response was that "we deduce based on the appearance" whether damage occurred and then, as best one can, "based on the various aspects of the damage [deduce] if it's recent or old." The excerpted testimony did not include any additional information from which a factfinder could allocate between damage caused by the May 2020 storm and damage caused by non-covered events.

21

None of Landmark's evidence contained information about segregating between covered and non-covered damage or even raised the possibility that segregation could be done. To the contrary, even under Landmark's evidence, the covered and non-covered causes of property damage could not be separated. Further, Landmark's summary judgment evidence did not establish that covered and non-covered events each *independently* caused the damage to its building. *See Dillon Gage*, 636 S.W.3d at 645 (stating that concurrent causes doctrine does not apply when a loss is independently caused by both a covered and a non-covered event); *see also Guar. Nat. Ins. Co. v. N. River Ins. Co.*, 909 F.2d 133, 137 (5th Cir. 1990) (applying Texas law to hold that hospital's failure to maintain security of its windows and its failure to properly observe its patient were independent causes of the patient's death by suicide). Accordingly, the concurrent causation doctrine applied and, under the evidence, was fatal to Landmark's claim. *See Dickinson I.S.D.*, 561 S.W.3d at 273.

On appeal, Landmark argues that it produced evidence that its building was damaged by the May 2020 storm, that the building's roof "had never been damaged by a storm causing leaks before," that the estimated cost of repairs "vastly exceeds" the policy's deductible "and the absurdly low estimate of ***zero*** damage [Insurance] gave to [Landmark] and based its denial of claim upon," that "the date of loss, the nature of loss and the *quantum* of damages fall squarely within the terms of the [p]olicy's coverage," and that Insurance "unreasonably and unjustifiably refused to pay [Landmark] what it is clearly owed under the [p]olicy." Regarding concurrent

22

causation, as it had in its summary judgment response, Landmark asserts that "the only application such doctrine might have is based *solely* upon [Insurance]'s manifestly self-serving, predetermined, incomplete and incompetent investigation." It further asserts that "[w]hile [Insurance] produced some evidence from its retained experts of alleged prior roof or other structural damage, even if the roof has sustained wear and tear damage, such damage was not visible[,] and it wasn't leaking until the storm at issue struck." Landmark argues that it did "far more than" what the Texas Supreme Court required in *McKillip*, which was to produce evidence that would "afford a reasonable basis for estimating the amount of damage or the proportionate part of damage caused by a risk covered by the insurance policy." *McKillip*, 469 S.W.2d at 163.

We disagree with Landmark's assessment of the summary judgment evidence. Nothing in the evidence contradicted Leach's conclusions that damage to the property had been from a combination of events, including improper roof runoff and storms preceding the May 2020 storm, and Landmark's summary judgment evidence included nothing on which a factfinder could rely to allocate between covered and non-covered events. We have found no summary judgment evidence, expert or otherwise, from either party, from which a jury could determine what proportion of the building's damage was caused by the May 2020 storm or other covered events or even any evidence suggesting that such a determination would be possible.

Landmark cites several cases that do not support its arguments. In *Travelers Personal Security Ins. Co. v. McClelland*, 189 S.W.3d 846, 851 (Tex. App.—Houston [1st

23

Dist.] 2006, no pet.), the First Court of Appeals reviewed concurrent causation case law, including *McKillip.* From that case law, the Houston court concluded that an insured need not explicitly state what damage was "'solely attributable' to the covered cause"; instead, the insured satisfies its burden by producing "some evidence that provides a reasonable basis" from which a jury can make a finding of the damage caused by a covered event. *Id.* In that case, the insureds' house foundation had moved, and their insurance policy covered the damage if it had been caused by a plumbing leak, but it provided no coverage for movement from natural conditions. *Id.* at 848. At trial, the insureds' expert testified that a foundation's movement from natural conditions occurs in the first fifteen years; that after that, "unless something happens out of the ordinary, that foundation is just going to stay there"; that when the insureds bought their 30-year-old house, the foundation was performing as expected; and that although the foundation had experienced some movement from natural conditions, plumbing leaks were the trigger that caused "dramatic movement" of the foundation. *Id.* at 849–51.

The Houston court held that the expert's testimony was some evidence from which the jury could have made its finding that eighty percent of the damage due to the house was caused by the plumbing leaks. *Id.* at 851–52. In other words, the insureds produced some evidence from which the jury could apportion the damage between covered and non-covered events. Here, on the other hand, the summary judgment evidence showed that Landmark's engineering expert had concluded that

the building's damage was caused by both covered and non-covered events—thus, in theory, *some* of the damage would have been covered under the policy—but the expert also stated that there was no way to determine *how much* of the damage was caused by covered events. That is, according to Landmark's own expert, it would be impossible for the jury to make a finding about what part of the damage was covered under the policy.

In *Southland Lloyds Ins. Co. v. Cantu*, the insureds and the insurer produced vastly different estimates of the amount of damage to the insureds' property after a hailstorm, which was a covered event under the insurance policy. 399 S.W.3d 558, 575–76 (Tex. App.—San Antonio 2011, pet. denied). The jury was presented with conflicting evidence about how much of the damage was caused by the covered peril—the insureds presented testimony that all the damage found by their expert was due to hail, and the insurer presented evidence that some was from wear and tear, which was not covered—and thus, the jury was "was faced with a credibility question." *Id.* at 576. In this case, on the other hand, the parties did not present conflicting evidence about the percentage of damage caused by a covered event. Instead, the only evidence was that even if the May 2020 storm caused some damage, that damage could not be segregated from damage caused by other storms.

As for Landmark's assertion that its roof never leaked before the May 2020 storm, we infer from that assertion an argument that the absence of previous leaking is some evidence that the May 2020 storm caused all of the roof damage or at

least presents some evidence from which a jury could apportion the damage from the May 2020 storm. Landmark does not direct us to where in the record either party produced summary judgment evidence that the roof had never leaked before the storm, and the only relevant evidence we have found was the statement in Spoon's letter to Insurance that "[o]bviously, there was a bre[a]ch as the interior was not damaged prior to the given date of loss per the Insured." In any case, Leach's report stated that in his opinion, the leaks were the result of a combination of causes, not just the May 2020 storm. He opined that because of poor rainfall runoff, "the roof membrane has receded and deflected over time," which "has allowed water to collect over time and has deteriorated the membrane such that it is susceptible to damage from hail impacts. This has allowed water to enter the building." He then concluded that "the *cumulative* effect" of the May 2020 storm and previous storms "damaged the roof and allowed water to enter the building." [Emphasis added.] Further, he testified that he could not determine what damage had been caused from just the May 2020 storm. In other words, regardless of when the leaks became apparent, there is no evidence from which the jury could determine what proportionate part of the cumulate damage had commenced during the policy period.

Because Landmark's evidence did not raise a fact issue sufficient to defeat summary judgment on Landmark's contract claim, we overrule Landmark's first and second issues.

26

## II. Extracontractual Claims

In addition to its contract claim, Landmark alleged violations of Texas Insurance Code Chapters 541 and 542 and a breach of the common law duty of good and fair dealing. *See* Tex. Ins. Code Ann. §§ 541.060(a)(1), (2)(A), (3), (4), (7) (listing unfair insurance settlement practices), 542.055, .056, .058 (requiring prompt payment of insurance claims); *Vandeventer v. All Am. Life & Cas. Co.*, 101 S.W.3d 703, 722 (Tex. App.—Fort Worth 2003, no pet.) (noting that Texas law has long recognized a common law duty of good faith and fair dealing in the context of processing and payment of insurance claims). Landmark argues in its third issue that it proffered sufficient summary judgment evidence to support its extracontractual claims.

In its summary judgment motion, Insurance argued that "an entitlement to benefits under the policy is a necessary element" of Landmark's statutory and common-law claims, and consequently, because "Landmark cannot establish that it is entitled to policy benefits, and because Landmark has not suffered any injury independent of its claim for policy benefits," Landmark's extracontractual claims also fail as a matter of law.

In its response, Landmark argued that the conclusions of the initial field adjuster and Burns were "just plain wrong" and that Insurance's refusal to pay any benefits was therefore "unreasonable and unjustified" and "the very definition of unfair and bad faith claim settlement, for which [Insurance] can and should be held accountable." Landmark further asserted that it had presented solid evidence to

establish the elements of its extracontractual claims. Landmark makes the same arguments on appeal. We agree with Insurance that the trial court correctly granted summary judgment on Landmark's extracontractual claims.

With respect to Landmark's statutory claims, as the Texas Supreme Court has explained, "[a]n insured cannot recover *any* damages based on an insurer's statutory violation unless the insured establishes a right to receive benefits under the policy or an injury independent of a right to benefits." *Menchaca*, 545 S.W.3d at 500. The summary judgment evidence negated Landmark's right to policy benefits. No summary judgment evidence supports a finding that Insurance committed a statutory violation and that, but for that statutory violation, Landmark would have been entitled to policy benefits. *See id.* at 494 (stating that insured may recover policy benefits for statutory violation if the policy entitles the insured to receive benefits and the insurer's statutory violation resulted in the insured not receiving those benefits). Accordingly, the evidence defeated Landmark's statutory claims unless Landmark produced evidence sufficient to raise a fact issue that it had suffered an injury that was independent of its right to policy benefits. *Id.* at 500.

"[A]n injury is not 'independent' from the insured's right to receive policy benefits if the injury 'flows' or 'stems' from the denial of that right.*" Id.* Landmark did not allege any conduct or injury unrelated to the denial of coverage, and its evidence did not raise a fact issue on independent injury. As a result, Insurance was entitled to summary judgment on Landmark's statutory claims.

28

As for Landmark's common-law bad-faith claim, that, too, was negated by the summary judgment evidence. "[A]n insurer breaches its duty of good faith and fair dealing by denying a claim when the insurer's liability has become reasonably clear." *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998); *see also State Farm Mut. Auto. Ass'n v. Cook*, 591 S.W.3d 677, 680 (Tex. App.—San Antonio 2019, no pet.) (noting that the common-law standard is the same as the statutory bad-faith standard). The elements of a claim for bad faith insurance practices are "(1) the absence of a reasonable basis for denying or delaying payment of the benefits of the policy, and (2) that the insurer knew or should have known that there was not a reasonable basis for denying the claim or delaying payment of the claim." *Berdin v. Allstate Ins. Co.*, No. 02-22-00426-CV, 2023 WL 7037619, at *7 (Tex. App.—Fort Worth Oct. 26, 2023, no pet.) (mem. op.).

Landmark argued in its summary judgment response and on appeal that its evidence made a prima facie case that Insurance's investigation was performed in a way to provide a pretextual basis for denial. Landmark argues that while Insurance "did purport to rely on [Burns's] report, [Landmark] has, again, shown that Burn[s]'s report was manifestly wrong in several critical particulars" and "clearly incorrect." However, based on the summary judgment evidence, even if Burns and Insurance's initial field adjuster had come to the same conclusions that Leach did about the source of property damage, Insurance would have had a reasonable basis on which to deny the claim. *See Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 340 (Tex. 1995) (holding no

bad faith denial of insured's claim by insurer when the facts compelling denial existed at the time of denial, even if insurer relied on a different, perhaps erroneous reason). Consequently, the same evidence that negated Landmark's contract claim also negated Landmark's common-law bad-faith claim. *See Progressive Cnty. Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 922 (Tex. 2005) (holding that appellee's common-law bad-faith claims were negated by a determination that there was no coverage). Although the Texas Supreme Court has "left open the possibility that an insurer's denial of a claim it was not obliged to pay might nevertheless be in bad faith if its conduct was extreme and produced damages unrelated to and independent of the policy claim," *id.*, there is no evidence in this case to support that exception to the general rule that extracontractual claims do not survive a determination of no coverage. We overrule Landmark's third issue.

We further overrule Landmark's fifth issue in which it argues that the trial court erred by granting summary judgment because Landmark presented more than enough evidence to support its breach of contract and extracontractual claims. We also overrule Landmark's fourth issue challenging the summary judgment as to its claims for attorney's fees and statutory interest because those claims depend on the viability of Landmark's other claims. *See, e.g.*, Tex. Ins. Code Ann. § 542.060.

## Conclusion

Having overruled Landmark's five issues, we affirm the trial court's judgment.

/s/ Mike Wallach

Mike Wallach

Justice

Delivered: December 28, 2023